Fuld, J.
In April of 1950, after receiving a letter from the Director of the Conservation Department, the Superintendent of the Law Enforcement Bureau sent a memorandum to the District Game Protectors under his supervision. Insofar as relevant, the communication called upon its recipients, among whom was Bay Burmaster, to discontinue “ carrying members of their family to or from their respective places of business and for other purposes not strictly in line with the performance of their official duties.” However, the memorandum went on to say, there was no disposition to prohibit the Game Protectors from having others with them if “in one way or another ’ ’ their presence tied in “ with the work to be performed ”.
On May 6, 1955, five years after this directive was issued, Mrs. Izora Burmaster was injured when the automobile, owned *68 by the State and operated by her husband, Ray, collided with a truck. She brought suit in the Court of Claims against the State, alleging that her husband’s negligent driving was responsible for the accident. The claim was dismissed; although the court found that Burmaster was negligent and the complainant free from contributory negligence, it concluded, in effect, that the presumption of section 59 of the Vehicle and Traffic Law was rebutted by virtue of the fact that the State had forbidden its employee Burmaster to “ transport ” his wife as a passenger in the State-owned vehicle. The Appellate Division took a different view; it unanimously reversed the trial court’s judgment on the law and facts, made new findings and awarded the claimant $15,000. More specifically, the Appellate Division found that the claimant’s presence in the car on the day of the accident was “ directly connected with and aided her husband’s use of the car on State business ” and that the directive relied upon by the State “ did not prohibit the presence of the claimant ” in the car.
Upon this appeal, brought as of right, we are required simply to determine whether the weight of evidence supports the findings and determination of the Court of Claims or those of the Appellate Division — and that, in turn, depends upon the meaning of the April, 1950 memorandum as well as upon the facts surrounding the claimant’s presence in the car on the day of the accident.
It is the State’s contention that Mr. Burmaster was prohibited from taking his wife with him on any trip whether devoted to the business of the State or to their own personal pleasure. The claimant, on the other hand, urges that the directive was plainly qualified and expressly allowed the employee to have his wife with him if he was on State business and her presence ‘ ‘ tied in ’ ’ with such business; and, as to that, says the claimant, her presence in the car on the morning in question was sanctioned not alone by the spirit but by the letter of the directive.
Mr. Burmaster, 69 years old at the time of the accident, testified that he had been employed for over 30 years by the New York State Conservation Department as a District Q-ame Protector for the Saranac Lake Division and that the automobile, *69 involved in the accident, had been assigned to him for his nse as Game Protector. He left Saranac Lake, he declared, at 6:30 o’clock in the morning of the day of the accident en route to Massena, some 65 miles away, concededly on State business and that, since he was starting on a long ride, was not feeling too spry and was ‘ ‘ afraid ’ ’ that he ‘ ‘ might get tired ’ ’, he had asked his wife to accompany him so that she might relieve him at the wheel if it became necessary.
For a man of Burmaster’s age about to start on a 130-mile trip, this was not an unreasonable precaution. Common sense and prudence suggested that he request his wife, or some other member of the family, to go along with him, and nothing in the directive rendered this course improper. Obviously, Mr. Bur-master was not using the automobile, to cull from that memorandum, to carry “ members of [his] family to and from their respective places of business or for other purposes not strictly in line with the performance of [his] official duties.” On the contrary, Mrs. Burmaster was with her husband to assist him, if necessary, in the operation of the automobile, so that she was in reality a person, to cull again from the memorandum, who did “ tie in in one way or another with the work to be performed which involves the use of the car.” (See Lamica v. Vollmer, 270 App. Div. 1063, affd. 296 N. Y. 660.)
We digress simply to call attention to the fact that we are not called upon to consider the case of injury to a passenger driving with a State employee, who has full-time possession of the car, if the car was being driven and used solely for pleasure. What our decision might there be must await the presentation of such a case. (See Hukey v. Massachusetts Bonding & Ins. Co., 277 App. Div. 411.) It is enough merely to note here that, where the car is being used on State business and the passenger is present to assist in the performance of such business, the State may not avoid liability if the negligence of its driver employee proves responsible for the accident and the injury. Certainly, nothing in section 59 of the Vehicle and Traffic Law requires a different result. That provision imposes liability upon the owner of an automobile for its negligent operation by one using it with the owner’s consent, express or implied. Indeed, once ownership is shown, a presumption arises that *70 the car was being driven with the owner’s consent (see Winnowski v. Polito, 294 N. Y. 159, 161; Orlando v. Pioneer Barber Towel Supply Co., 239 N. Y. 342), and it matters not that the owner of the vehicle may be the State. (See Adams v. State of New York, 296 N. Y. 654.)[1]
The owner may, of course, restrict the use of the car when in the hands of another (see Hinchey v. Sellers, 7 N Y 2d 287, also decided today; Arcara v. Moresse, 258 N. Y. 211), and an order by the owner that no passengers are to be carried would seem a valid restriction which, if violated, would mean that the vehicle was being driven without' the owner’s permission. But, as already shown, the directive issued in 1950 did not prevent Mr. Burmaster from having his wife accompany him on official business in order to assist him in the driving of the car if such a course became necessary.
In sum, then, since the weight of evidence clearly supports the findings and conclusions of the Appellate Division, rather than those of the Court of Claims, the judgment appealed from should be affirmed, with costs.

. The trial court had placed its dismissal in large part on a finding that the State had no knowledge, actual or implied, that claimant was riding in the car; quite obviously, the presumption created by section 50 comes into play and renders proof of actual knowledge unnecessary.