**David M. WILLIAMS, Appellant,**

v.

**RAWLINGS TRUCK LINE, INC., et al.,
Appellees.**

**No. 18648.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 27, 1965.

Decided Dec. 30, 1965.

Mr. Joseph Zitomer, Silver Spring, Md., for appellant.

Mr. William E. Stewart, Jr., Washington, D. C., with whom Messrs. Richard W. Galiher, William H. Clarke and John H. Verchot, Washington, D. C., were on the brief, for appellees Rawlings Truck Line, Inc., and John E. Willis.

Mr. John L. Schroeder, Washington, D. C., for appellee Goldberger.

Before BAZELON, Chief Judge, WASHINGTON, Senior Circuit Judge,* and DANAHER, Circuit Judge.

PER CURIAM:

On the night of June 1, 1958, appellant Williams was a passenger in a car being operated in a westerly direction on New York Avenue in the District of Columbia. The driver, one Rivera, now missing, undertook to make a lefthand turn into the driveway of a gas station on the south side of the street. Claiming to have been injured when the car was thereupon in collision with a truck bound in an easterly direction, Williams brought this suit against Rawlings Truck Line, the driver of its truck, one Willis, and one Harry Goldberger whose New York registration tags were on the passenger car. The trial judge directed a verdict in favor of the appellee Goldberger, and the jury returned a verdict in favor of the appellees Rawlings Truck Line and Willis.

I

■ The appellant here contends that the net effect of certain rulings by the trial judge was to preclude the jury from considering one of his two theories of negligence—that since the truck driver had "qualified" his technical right of way by flashing his right-turn directional signal, Willis should have anticipated that others might or would rely upon that signal, and should have given warning or so controlled his vehicle as to avert the collision. We do not agree.

The trial judge excluded certain traffic regulations [1] which were, at most, only remotely related to the appellant's theory of the case or were not warranted by the evidence. The exclusion of an extra-judicial statement by the missing Rivera concerning the truck's signal was harmless for even had Rivera's statement been received, it would have been merely cumulative to detailed testimony already before the jury. The instructions of the trial judge were adapted to the issues as presented and argued and adequate for the jury's guidance. Certainly the trial judge was not bound to charge [2] in the exact language tendered by Williams.

---

* Circuit Judge Washington became Senior Circuit Judge on November 10, 1965.

1. The following sections of the District of Columbia Traffic and Motor Vehicle Regulations were offered in evidence: 21(a), 22(a) (c), 39(a) (b), 40(a), 47(b), 99(c), 132(b), 143(a) and 146(c) (d). The court admitted sections 22(c), 39(a), 47(b), and 143(a). We fail to perceive what difference was made by the fact that some of the admitted regulations were successfully offered by the appellees Rawlings and Willis.

2. The trial court charged the jury, in part:

"* * * you must take into consideration not only who had the technical right of way but the *relative distance of the vehicles from the point of accident, their respective speeds and other prevailing traffic and weather conditions.*

"* * * the fact [*that a party*] * * * *has a technical right of way does not excuse him from exercising ordinary care to avoid injuries to others.*" (Emphasis added.)

We have carefully considered the appellant's claims in light of the record and of the instructions as a whole. We are satisfied that the jury had not been foreclosed from considering the appellant's theory of negligence based on the effect to be given to the use of the directional signal by the truck driver. Certainly, substantial rights have not been shown to have been adversely affected within the purview of FED.R.CIV.P. 61.[3] The verdicts in favor of the appellees Rawlings Truck Line and Willis are affirmed.

## II

A more substantial issue is raised by the directed verdict in favor of appellee Goldberger because of the facts[4] concerning Goldberger's involvement in the case. On May 3, 1958, Goldberger, a resident of New York, sold a car registered in his name to Rivera, also a New York resident. On the day of sale Goldberger endorsed the back of the registration card, but allowed Rivera to take the car while it still bore the New York license plates issued in Goldberger's name.

Rivera did not surrender the license plates to Goldberger until after the accident which is the subject of this suit, and these license plates were on the car at the time of the accident.

Appellant asserts that Goldberger's liability for the alleged negligence of Rivera is to be determined solely by New York law. A New York statute requires that upon transfer of a vehicle registered in New York the license plates must be removed from the car. N.Y. VEHICLE AND TRAFFIC LAW § 420.[5] Another section provides that:

> "Every owner of a vehicle * * * shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle * * * by any person using or operating the same with permission, express or implied, of such owner." *Id.* § 388.[6]

Were New York statutory law to be applied, an important issue would be whether Goldberger "owned" the car within the meaning of section 388. The New York courts have developed the common law

Since at trial appellant concentrated on the use of the turn signal and presented his theory to the jury both in his opening and closing arguments, this instruction was adequate to call the theory to the jury's attention and to explain the applicable legal rules—that appellees were under a duty to exercise reasonable foresight and care to avoid the accident. In addition, we think it is safe to assume that the jury was familiar with the meaning and significance of turn signals as commonly used in traffic on heavily-traveled city streets, and that they were capable, without detailed instruction, of evaluating the reasonableness of the driver's use of such signals.

3. Rule 61 directs that:
 "No error in either the admission or exclusion of evidence and no error or defect in * * * anything done or omitted by the [trial] court * * * is ground for granting a new trial or for setting aside a verdict * * * unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard

any error or defect in the proceeding which does not affect the substantial rights of the parties."

4. These facts were set forth in an affidavit submitted by Goldberger along with his answer to the complaint. Although factual dispute appears to exist concerning the details of Goldberger's agreement with Rivera, they are not germane to our disposition of the case.

5. This section is substantially identical to the former section 61 which was in effect at the time of the sale.

6. This section is an amended version of the former section 59 which was in effect at the time of the accident. The new version has added the qualification that it applies to "Every owner of a vehicle *used or operated in this state* * * *." (Emphasis added.) Because of our disposition of this appeal we do not reach the questions of whether the new version is to be applied retroactively and of the effect of the added qualification upon extra-territorial application of the statute.

doctrine that the former owner of a car who fails to comply with the statutes governing transfer of title, is estopped from denying his ownership in order to avoid liability. E. g., Phoenix Insurance Co. v. Guthiel, 2 N.Y.2d 584, 161 N.Y.S. 2d 874, 141 N.E.2d 909 (1957); Switzer v. Aldrich, 307 N.Y. 56, 120 N.E.2d 159 (1954); Reese v. Reamore, 292 N.Y. 292, 55 N.E.2d 35 (1944); Shuba v. Greendonner, 271 N.Y. 189, 2 N.E.2d 536 (1936). Thus, as Goldberger himself recognizes, if New York law in its entirety were applied, he would experience difficulty in avoiding liability for any negligent act committed by Rivera while driving the car.[7]

Appellee Goldberger counters that the law of the District of Columbia should be applied. Our Motor Vehicle Safety Responsibility Act declares in language similar to that of New York that, "Whenever any motor vehicle * * * shall be operated [within the District] * * * by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed to be the agent of the owner * * *." D.C.Code § 40–424 (1961). We have read the statute as creating a new rule of liability in which agency is based upon consent. Forrester v. Jerman, 67 App.D.C. 167, 90 F.2d 412 (1937). However, the District's decisional law recognizes that the registered owner is free to prove passage of equitable title and that such proof will relieve the former owner of liability under section 40–424. Burt v. Cordover, 117 A.2d 116 (D.C.Mun.Ct. App.1955); Gasque v. Saidman, 44 A.2d 537 (D.C.Mun.Ct.App.1945); Mason v. Automobile Finance Co., 73 App.D.C. 284, 121 F.2d 32 (1941). Cf. Rosenberg v. Murray, 73 App.D.C. 67, 68, 116 F.2d 552, 553 (1940).

We are thus confronted with what appears to be a classic conflict of law problem. As we stated in the recent case of Tramontana v. S. A. Empresa de Viacao Aerea Rio Grandense, 121 U.S.App.D.C. 338, 341, 350 F.2d 468, 471 (1965), cert. denied, Tramontana Varig Airlines, 86 S.Ct. 1195 (March 21, 1966):

"The Supreme Court * * * has recognized the inadequacies of the theoretical underpinnings of Slater [v. Mexican National R. R., 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900 (1904)] and its progeny. The latter cases have a highly attenuated precedential weight, both in authority and reason. Thus we are free to explore the question presented by this appeal in the light of the newer concepts of conflict of laws." (Footnotes omitted.)

Two separate but closely related issues are at once apparent, each requiring an independent evaluation of the respective interests of New York and of the District in the outcome of this case. The first is whether Goldberger is the "owner" of the car—e. g., whether the New York rule of estoppel or the District of Columbia rule allowing proof of sale applies. The second is, assuming that Goldberger is found to be the "owner" of the car, whether his liability is to be measured under New York's or the District's statute rendering an automobile owner vicariously liable for the torts of another committed while driving his car. We turn first to the issue which was raised in the District Court and presented to us in brief and argument—that of Goldberger's "ownership" of the vehicle.

Resolution of this issue turns upon whether the District of Columbia has any significant interest in applying its rule of "ownership" to this case. The basic policy which motivated passage of

<hr>

7. Appellee Goldberger could, of course, raise other defenses which are recognized by New York law even if he is estopped from denying his ownership of the auto. See, e. g., Burmaster v. State, 7 A.D.2d 775, 179 N.Y.S.2d 980 (1958) aff'd, 7 N.Y.2d 65, 195 N.Y.S.2d 385, 163 N.E.2d

742 (1959); Parker v. Telesco, 111 N.Y.S.2d 481 (Sup.Ct.1952); Hukey v. Massachusetts Bonding & Insurance Co., 277 App.Div. 411, 100 N.Y.S.2d 643 (1950); Fluegel v. Coudert, 244 N.Y. 393, 155 N.E. 683 (1927).

section 40–424 "was to control the giving of consent to irresponsible drivers by the one having that power rather than to impose liability upon one having a naked legal title with no immediate right of control." Mason v. Automobile Finance Co., *supra* 73 App.D.C. at 287, 121 F.2d at 35; and see Forrester v. Jerman, *supra*. An additional goal presumably was "To furnish a financially responsible defendant * * *." National Trucking & Storage Co. v. Driscoll, 64 A.2d 304, 308 (D.C.Mun.Ct.App.1949). In short, section 40–424 and the doctrine of allowing a registered owner to disprove ownership were designed to protect the persons and property of District residents by encouraging safe driving and by providing injured parties with potential defendants. Yet, none of the parties to this suit is a resident of the District, nor was the car registered here. The place of the accident was, in this sense, wholly fortuitous. Hence, the District is not in position to assert an interest in the application of its law to this case; such an application would not further the policies underlying the District's law. Conversely, no policy of the District[8] would be impinged upon by application of the New York estoppel doctrine under which Goldberger might be held liable for the alleged negligence of Rivera.

New York, on the other hand, has a substantial interest in the application of its rule of estoppel to this case. This New York doctrine is designed to enforce by its *in terrorem* effect the vehicle registration laws of the state, and thereby to maintain the integrity and accuracy of that state's vehicle registration system.[9] Fulfillment of this basic goal would require extra-territorial application of the estoppel doctrine.[10] Otherwise, New York residents could improperly transfer their cars any time the car was to be permanently, or even temporarily, removed from the state without fear of liability; ultimately such a circumstance might lead to a significant

---

8. It is possible, moreover, to view the District's policy of allowing proof of sale as a rule designed to allocate losses among plaintiffs and defendants. In effect, the District has chosen to protect from liability residents who have given up actual possession of the vehicle by allowing them to prove equitable passage of title. This policy would have no application to Goldberger, who was not a resident of the District; Congress when it enacted section 40–424 and the courts when they allowed proof of non-ownership could not have been concerned with protecting defendants wholly foreign to our jurisdiction. Cf. Baxter, Choice of Law and the Federal System, 16 STAN. L.REV. 1, 6–9, 12–13 (1963); Currie, Married Women's Contracts: A Study in Conflict-of-Laws Method, 25 U.CHI.L. REV. 227, 251–59 (1958).

9. "To permit the respondent to relieve himself of liability by proving that he was not in fact the owner of the automobile and thereby establish his illegal and fraudulent act in procuring its registration in his own name would be against public policy and would encourage fraudulent and illegal deceptions on the state in procuring the registration of automobiles * * *." Shuba v. Greendonner, 271 N.Y. 189, 194, 2 N.E.2d 536, 539 (1936).

10. To the extent that the New York estoppel rule is also intended to aid New York residents by providing a readily available defendant from whom to seek compensation, it would have no application in this case where the appellant was a resident of New Jersey. But the New York courts have clearly indicated that this is not the primary purpose of the estoppel rule. In Phoenix Insurance Co. v. Guthiel, 2 N.Y.2d 584, 161 N.Y.S.2d 874, 141 N.E.2d 909 (1957), the New York Court of Appeals held that an insurance company was free to prove that the defendant did not "own" a car registered in his name so as to avoid liability under an automobile liability policy. Thus, the rule will likely prove ineffective in establishing a "deep-pocket" for the benefit of New York plaintiffs. The injured party, in many cases, will only be able to look to the assets of the registered owner and will not be able to collect from the latter's insurance company. *Compare* Switzer v. Aldrich, 307 N.Y. 56, 120 N.E.2d 159 (1954), *with* Phoenix Insurance Co. v. Guthiel, *supra*.

impairment of New York's record-keeping system.[11]

 In sum, this case presents a classic "false conflicts" situation.[12] Adoption of the New York doctrine of estoppel will further the interests of New York, but will not interfere with any of the articulated policies of the District of Columbia. On the other hand, application of the District's rule allowing proof of sale would impinge upon New York's interests, without furthering any of the recognizable policies of the District.[13] As a false conflicts case, our decision becomes simple: we apply the estoppel rule of New York, the only jurisdiction with an interest in having its law applied to the issue of defining *ownership* of the vehicle.[14] We conclude that the District Court erred in directing a verdict in favor of Goldberger.[15]

With the "ownership" aspect determined as we have seen, the parties and the court at a new trial may be confronted with a consequential problem, not previously reached because of the directed verdict. Is Goldberger's potential *liability* as "owner" of the car to be measured under the law of New York or under our statute, previously cited? We note that the New York statute, section 388, *supra* p. 583, is similar[16] both in

---

11. The District, moreover, may share New York's interest to the extent that maintaining the New York registration records with the maximum degree of accuracy would benefit the District by enabling its police and residents to identify owners of New York vehicles in use within the District.

New York may have an additional interest in having its law applied in this case as a method of allocating losses between plaintiffs and defendants. Goldberger, of course, was a New York resident, and New York might feel that he should bear the loss of the accident regardless of the residence of the appellant.

12. See, e.g., Baxter, *supra* note 8 at 6–9; Currie, Notes on Methods and Objectives in the Conflict of Laws, 1959 DUKE L.J. 171 (1959); Currie, The Constitution and the Choice of Law: Governmental Interests and the Judicial Function, 26 U.CHI.L.REV. 9, 9–10 (1958); Currie, Married Women's Contracts: A Study in Conflict-of-Laws Method, 25 U.CHI.L. REV. 227, 238, 251–259 (1958); EHRENZWEIG, CONFLICT OF LAWS §§ 102–103 (1962).

13. Nor has New Jersey, the residence of the appellant, asserted an interest in protecting its resident plaintiffs in a situation such as this case presents. See Burke v. Auto Mart, Inc., 37 N.J.Super. 451, 117 A.2d 624 (App.Div.1955).

14. In this view we need not explore other facets of the conflicts rules, such as the "most significant relationship" theory. See, e.g., GOODRICH, CONFLICT OF LAWS §§ 92, 93, 98 (1964); RESTATEMENT (SECOND), CONFLICT OF LAWS §§ 379–390 (Tent. Draft No. 8, 1963); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). For a summary and bibliography of the extensive criticisms to this approach see Ehrenzweig, The Second Conflicts Restatement: A Last Appeal for Its Withdrawal, 113 U.PA.L.REV. 1230 (1965).

Even if we applied this theory, the New York estoppel doctrine would still control, since that state has more significant contacts with the issue of "ownership" than the District. This is especially true because New York is the only jurisdiction with a meaningful interest in the application of its law to the problem. Cf. RESTATEMENT (SECOND), CONFLICT OF LAWS § 379 and Comment C, § 390f, § 390g (Tent. Draft No. 8, 1963).

15. On remand, the issue of Rivera's negligence will, of course, be open for trial. As the parties have apparently recognized, this is a separate question from that involved in this appeal, and the appropriate law to determine questions of "standard of care" is that of the District of Columbia—the jurisdiction in which the accident occurred and presumably the only jurisdiction with an interest in defining whether Rivera's conduct was negligent. See, e.g., Boland v. Love, 95 U.S.App.D.C. 337, 341, 222 F.2d 27, 31 (1955); Babcock v. Jackson, 12 N.Y.2d 473, 483, 240 N.Y.S.2d 743, 191 N.E.2d 279, 284 (1963).

16. Apparently the only substantial difference between the New York statute and the District statute is that the District's version is framed as a presumption,

purpose and in wording to our own which gives rise to the likelihood that defenses under both statutes may be identical. If so, the problem of selecting the applicable statute will become moot. If not, however, a "true conflicts" question will then be presented. It may be that the courts of New York have not insisted that the interests of that state require that its section 388 be applied to accidents outside the state.[17] If that be so, there is no reason why the District's rules of liability under section 40–424 might not apply. Granting that the District of Columbia has no interest in the issue of defining "ownership" of a vehicle, the District may nevertheless have an interest in the application of other facets of section 40–424 to an accident which has occurred here.

We simply point, without further comment, to a possible liability question, the answer to which will depend upon an analysis of the interests and policies of the respective jurisdictions and of the relationships of the parties to New York and to this District.

Affirmed as to Rawlings Truck Line and Willis.

Reversed as to Goldberger.

---

whereas the New York statute makes liability absolute. The case law under the two statutes, however, appears to render this difference in wording nugatory. See, e.g., cases cited in note 7, *supra;* Mason v. Automobile Finance Co., 73 App.D.C. 284, 121 F.2d 32 (1941); Johnson v. Keyes, 201 A.2d 24 (D.C.Ct.App.1964).

17. The New York courts have stated in many opinions that the substantive law of section 388 has no application to accidents occurring without the state. See, e.g., Selles v. Smith, 4 N.Y.2d 412, 176 N.Y.S.2d 267, 151 N.E.2d 838 (1958); Cherwein v. Geiter, 272 N.Y. 165, 5 N.E.2d 185 (1936). This doctrine, however, was apparently a derivative of the traditional conflict of laws rule that the law of the place of the tort governed. See, e. g., Burke v. New York, N.H. & H.R. R., 267 F.2d 894, 897 (2 Cir. 1959); Badhwar v. Colorado Fuel & Iron Corp., 138 F.Supp. 595, 615 (S.D.N.Y.1955); De Sayve v. De La Valdene, 124 N.Y.S.

2d 143, 153 (Sup.Ct.1953); Transamerica General Corp. v. Zunino, 82 N.Y.S.2d 595, 604 (Sup.Ct.1948). Since the New York Court of Appeals last announced that section 388 was not to be applied extraterritorially, the New York conflict of laws doctrine has undergone substantial change. New York has now adopted the "grouping of contacts" approach for the choice of laws in tort cases. See, e.g., Babcock v. Jackson, *supra* note 14; Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965). For this reason, the authority of the earlier line of cases has been substantially impaired, and it seems likely that if faced with the question today the New York courts would apply section 388 to at least some accidents occurring outside the state. See Annot. 95 A.L.R.2d 12, 21 & n. 3 (1964). But cf. Long v. Pan American World Airways, Inc., 23 A.D.2d 386, 260 N.Y.S.2d 750 (1965).