John Alexander McCLELLAN, Appellant,

v.

ALLSTATE INSURANCE COMPANY, a corporation, and H. J. Banachowski, Appellees.

John A. McCLELLAN, Appellant,

v.

Daniel T. PICKETT, American Motorists Insurance Company, and Harry J. Banachowski, d/b/a National Parking Service, Appellees.

Nos. 4151, 4152.

District of Columbia Court of Appeals.

Argued June 17, 1968.

Decided Oct. 24, 1968.

Darryl L. Wyland, Washington, D. C., for appellant. Brendon G. Fitzpatrick also entered an appearance for appellant.

Patrick J. Attridge, Washington, D. C., with whom Edwin A. Sheridan, Washington, D. C., was on the brief, for appellee Allstate Insurance Co.

Ben Cotten, Washington, D. C., with whom F. Wainwright Barnes, Washington, D. C., was on the brief, for appellees Daniel T. Pickett and American Motorists Insurance Co.

Joseph L. Holland, Washington, D. C., for appellee Harry J. Banachowski.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

MYERS, Associate Judge:

Appellant delivered his automobile, for storage during the day, to an attendant employed at a parking lot operated by appellee Banachowski, and, as required by the lot, left the keys in the ignition. When he returned to reclaim his car, a man, later identified as one John Teamus, who had just delivered a car to another customer, approached appellant and inquired, "Which car is yours?" Appellant pointed out his car, and Teamus went to get it. As he was driving across the lot to the exit where appellant was waiting to receive his car and pay the parking fee, Teamus swerved to avoid running into a pile of macadam, lost control of the car, left the lot and entered the street, where he collided with other automobiles. Owners of the damaged vehicles, and/or their collision insurance carriers, sued appellant, as well as Banachowski[1] and Teamus[2] for the resulting damage.

At trial, testimony brought out that the regular attendant, James Prue, was responsible for two lots operated by appellee. Although the lots were in the same block, they were separated by a brick building and, according to Prue, it took him several minutes to walk from one lot to the other. When he was especially busy, Prue would obtain additional help from another downtown lot operated by appellee. Appellant was a regular customer, and sometimes Prue, sometimes another attendant, would handle his car. At the time appellant came for his car, Prue was the only attendant on duty and had gone to the other lot to obtain a car for a customer. Teamus was not a regular or substitute attendant hired by appellee. Neither had he been asked by Prue to assist. Rather, it appears Teamus had voluntarily undertaken to assume the role of attendant and to deliver cars to customers who came to claim their autos. It was not the first time he had done so. Some five or six weeks before the events here under consideration, Prue had caught

Teamus similarly moving cars "and had run him off the lot."

The trial judge, sitting without a jury, found appellant liable for the damages sustained and entered judgment in favor of Banachowski on appellant's cross-claim and third party complaint which alleged Banachowski's negligence and sought from him indemnification or contribution for all or part of any judgment rendered against appellant, who here challenges these rulings.

Appellant contends, primarily, that the trial judge erred (1) in holding that appellant consented to the operation of his car by Teamus and therefore, under Section 40–424 D.C.Code, 1967 ed., is liable for the resulting damage, and (2) in failing to award him judgments on his claims against appellee for indemnification or contribution.

We first consider whether appellant was properly held liable under Section 40–424, which provides:

Whenever any motor vehicle * * * shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner.

There is thus created a statutory presumption—a statutory rule of evidence that proof of ownership of a motor vehicle involved in an accident shall be prima facie evidence that the vehicle is being operated with the consent of the owner. The presumption is, however, a rebuttable one and continues only until overcome by uncontradicted proof sufficient to destroy the inference. Furthermore, in our judgment, the consent contemplated by the statute is

---

1. As used hereafter, "appellee" will refer only to appellee Banachowski.

2. Teamus was never served or located, and he did not appear as a witness.

an informed consent, based on knowledge, not clouded by mistake or misrepresentation, or produced by error of fact.[3] Consent implies knowledge on the part of the person giving consent,[4] and consent obtained on the basis of deception is no consent at all.

We have found no case which spells out completely, for the purposes of this appeal, the nature of the consent which arises from the bailor-bailee relationship created under the facts of this case.[5] However, in our opinion, an owner who leaves his car, together with its keys, with an attendant at a parking lot or garage, for a stipulated fee, consents only to the limited operation of his car as necessarily incident to its storage there and to its operation only by authorized employees of that lot who meet the requirements of applicable police regulations, who are qualified and licensed to drive, and who stand in the relationship of agent or servant of the operator of the lot so that, in the event of any dereliction on the part of an employee, he, the car owner, may seek redress from the lot operator. The owner certainly does not indiscriminately consent to the driving of his car by just anyone, and in our judgment he is entitled to rely on the apparent representation that any individual present on the lot, acting in the manner of an authorized attendant and performing the usual tasks incident thereto, meets these qualifications. We do not conceive a duty upon appellant to make a searching inquiry into Teamus' status and to ask for his credentials. Rather, we believe there was an obligation upon appellee to provide a sufficient number of attendants or adopt adequate safety measures to reasonably insure that no unauthorized person would drive the vehicles parked on the lot.[6] Supervision was especially necessary here because the cars, which were required to be left with the keys in the ignition, were so readily susceptible of misappropriation. Within the purview of the facts of this case, we cannot subscribe to a rationale that would render appellant liable under Section 40–424 of the Motor Vehicle Safety Responsibility Act on the premise that he gave a valid, effective consent to the operation of his car by Teamus.

Appellees rely on Mason v. Automobile Finance Co., 73 App.D.C. 284, 287, 121 F.2d 32, 35 (1942), wherein it was held that the purpose of this act is to "place the liability upon the person in a position immediately to allow or prevent the use of the vehicle * * * by giving lawful and effective consent or prohibition to its operation by others." In our interpretation, this expression of purpose fortifies rather than weakens our conclusion that appellant is not liable under Section 40–424 for the damages sought in these actions.

The basic policy which motivated passage of this section "was to control the giving of consent to irresponsible drivers by one having that power, rather than to impose liability upon one having a naked legal title with no immediate right of control." Williams v. Rawlings Truck Line, Inc., 123 U.S.App.D.C. 121, 125, 357 F.2d 581, 585 (1965), citing Mason v. Automobile Finance Co., supra. See also Johnson v. Keyes, D.C.App., 201 A.2d 24 (1964). Although these cases are concerned with the interpretation of the terms "owner" and "ownership" and with differentiating the incidents of legal and equitable title, we believe they are applicable in the present case where liability must be determined within the framework of facts delineating who had the immediate right of control.

The requirement that the ignition key be left in the car indicates that custody is assumed by the parking lot, and

3. Cf. Pan American Production Co. v. Robichaux, 200 La. 66, 8 So.2d 635, 639 (1942).

4. Cf. Bradford v. Sargent, 135 Cal.App. 324, 27 P.2d 93, 97 (1933).

5. Cf. 1420 Park Road Parking v. Consolidated Mut. Ins. Co., D.C.Mun.App., 168 A.2d 900, 901 (1961).

6. Cf. Loeb v. Whitton, 77 Ga.App. 753, 49 S.E.2d 785 (1948).

the presence of an attendant who parks the cars and moves them when necessary signifies the assumption of custody and responsibility. Westchester Development Corp. v. Burkett, D.C.Mun.App., 38 A.2d 628, 629 (1944). The very nature of the bailment requires that possession and control pass from the bailor to the bailee. 1420 Park Road Parking v. Consolidated Mut. Ins. Co., D.C.Mun.App., 168 A.2d 900 (1961); Quinn v. Milner, D.C.Mun.App., 34 A.2d 259 (1943). By surrendering his car to appellee's employee, leaving the doors unlocked and the keys in the ignition so the car could be physically moved for the convenience of the parking lot, appellant made such a delivery of the vehicle to the bailee as would entitle the latter to exclude for the period of the bailment possession even of the owner. Cf. Suits v. Electric Park Amusement Co., 213 Mo.App. 275, 249 S.W. 656, 658 (1923); 8 C.J.S. Bailments § 15 (1962). The bailment, with its attendant right to control, did not terminate until delivery of the car to appellant and his resumption of possession.

■ In the light of these principles, we are of the opinion that appellant does not meet the description of the person who was in a position immediately to consent to the use of his vehicle. During the period of the bailment, the power to control it, to consent to its use, was in appellee and the attendants selected and employed by him. By merely identifying his car in order that it could be brought to him, appellant did not terminate that relationship or appoint Teamus his agent—the bailor-bailee relationship between appellee and appellant is not so simply converted into a master-servant relationship between appellant and Teamus. We will not extend the provisions of Section 40–424 to saddle a hapless motorist, who had surrendered custody and control of his car to a parking lot for safekeeping, with liability, for damages arising out of a situation which he did not create and wherein he was nowise negligent.

Our holding that appellant was not liable, as a matter of law, for the damages sought here, renders moot the correctness of the judgments denying appellant's claims against appellee for indemnification or contribution.[7]

Case No. 4151: Judgment in favor of Allstate Insurance Company reversed.

Case No. 4152: Judgment in favor of Daniel T. Pickett and American Motorists Insurance Company reversed.

---

7. At the conclusion of the testimony introduced on behalf of appellees Pickett and his insurance company (Case No. 4152), the trial judge dismissed their claim against Banachowski on the ground there was no showing of liability on the part of the parking lot operator. We do not here review this action as no appeal was taken from this dismissal.