OPINION OF THE COURT
 

 Wesley, J.
 

 Stanley Murdza, a Canadian resident, was injured when struck by a van as he walked across an intersection in Ellicottville, New York. The van, operated by Robert Zimmerman, had been entrusted to his girlfriend Margaret Scicchitano by her employer, Brown and Williamson Tobacco Corporation (B&W). The van was leased to B&W by its owners, D.L. Peterson Trust (the Trust) and PHH Fleet America Corporation (PHH). Although B&W’s employee handbook specifically restricted use of company vehicles to employees and their
 
 *378
 
 licensed, spouses,
 
 [1]
 
 the agreement leasing the vehicle to B&W contained no use restrictions.
 

 Murdza commenced a negligence action in United States District Court against Zimmerman, B&W, the Trust and PHH and eventually moved for summary judgment (see
 
 Murdza v Zimmerman,
 
 2000 WL 1887823, 2000 US Dist LEXIS 18768 [WD NY, Dec. 5, 2000]). The court granted that part of Murdza’s motion against Zimmerman asserting his negligent operation of the B&W vehicle. In his motion, Murdza also argued that B&W, the Trust and PHH were owners of the van, as defined by the Vehicle and Traffic Law, and were therefore liable for Zimmerman’s negligent operation of the vehicle
 
 (see
 
 Vehicle and Traffic Law §§ 128, 388). The corporate defendants countered with cross motions for summary judgment. B&W asserted that the restrictions on vehicle use in its employee handbook established that Zimmerman drove the van without B&Ws consent. PHH and the Trust argued that, although its lease contained no use limitations, the restriction set forth in B&W’s handbook also precluded liability on their part.
 

 The District Court granted the corporate defendants’ motion and dismissed the complaint against them. On appeal, the Second Circuit noted that “[s]ection 388 (1) [of the Vehicle and Traffic Law] establishes a rebuttable presumption that a vehicle is operated with the owner’s consent”
 
 (Murdza v D.L. Peterson Trust,
 
 292 F3d 328, 330 [2d Cir 2002]). Finding, however, that “sources of New York law do not provide clear answers” as to whether the restrictions in B&W’s employee handbook fully rebutted this presumption of consent as to B&W, PHH and the Trust, the Circuit Court certified the following questions to us:
 

 “(1) Did the lessee Brown and Williamson effectively rebut the presumption of consent of the owner, so as to make it immune as a matter of law from imposition of owner’s liability under Section 388 (1) in these circumstances by reason of the restrictive provision in its employee manual?
 

 “(2) Were the lessors PHH and the Trust immune as a matter of law from imposition of owner’s liability under Section 388 (1) in these circumstances by reason of the restrictive provision in Brown &
 
 *379
 
 Williamson’s employee manual?”
 
 (Id.
 
 at 330, 333.)
 

 We accepted certification (98 NY2d 686 [2002]) and now answer the first question in the affirmative and the second in the negative.
 

 Vehicle and Traffic Law § 388 (1) makes every owner of a vehicle liable for injuries resulting from negligence “in the use or operation of such vehicle * * * by any person using or operating the same with the permission, express or implied, of such owner.”
 
 [2]
 
 The statute altered the common-law rule that a vehicle owner could only be held liable for the negligence of a permissive driver under agency or respondeat superior theories
 
 (see Morris v Snappy Car Rental,
 
 84 NY2d 21, 27 [1994]).
 

 Public policy concerns surrounding the enactment of section 388 have long informed its application. We have acknowledged that this section “expresses the policy that one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant”
 
 (Continental Auto Lease Corp. v Campbell,
 
 19 NY2d 350, 352 [1967]). Indeed, section 388 was designed to “remove the hardship which the common-law rule visited upon innocent persons by preventing ‘an owner from escaping liability by saying that his car was being used without authority or not in his business’ ”
 
 (Morris,
 
 84 NY2d at 27, quoting
 
 Mills v Gabriel,
 
 259 App Div 60, 61-62 [2d Dept 1940]).
 

 An equally important policy reflected in section 388 is the heightened degree of care owners are encouraged to exercise when selecting and supervising drivers permitted to operate their vehicles.
 
 [3]
 
 Thus, section 388 simultaneously increases the likelihood of compensation for those injured in motor vehicle accidents and decreases the probability of such accidents by encouraging an owner’s prudent selection of drivers.
 

 
 *380
 
 Proof of consent can, however, often depend on the testimony of a hostile party — the owner. Recognizing this, we have held that “proof of ownership of a motor vehicle creates a rebuttable presumption that the driver was using the vehicle with the owner’s permission, express or implied”
 
 (Leotta v Plessinger,
 
 8 NY2d 449, 461 [I960]). Once the plaintiff meets its initial burden of establishing ownership, “a logical inference of lawful operation with the owner’s consent may be drawn from the possession of the operator” (see
 
 St. Andrassy v Mooney,
 
 262 NY 368, 371 [1933]). This presumption may be rebutted, however, by substantial evidence sufficient to show that a vehicle was not operated with the owner’s consent (see
 
 Leotta, 8
 
 NY2d at 461). In this context, we have noted that where “substantial evidence established that permission was conditioned upon driving in a certain locality only or conditioned upon instructions not to allow any riders, the owner was exonerated from liability when an accident occurred subsequent to a breach of the restriction”
 
 (id.
 
 [citations omitted]).
 

 As the Circuit Court noted, our resolution of the questions before us requires us to examine the reach of
 
 Motor Veh. Acc. Indent. Corp. v Continental Natl. Am. Group Co.
 
 (35 NY2d 260 [1974]). There, we deemed a car rental agency to have “constructively” consented to a third-party driver’s operation of its rental vehicle despite a lease provision restricting use of the vehicle to the lessee and his immediate family. Because there was constructive consent, we held the car rental agency was subject to statutory liability under section 388 for permissive use of the vehicle.
 

 Our finding of constructive consent — despite the owner’s restrictions — rested, in part, on the public policy concerns surrounding the large number of vehicles placed on the road by businesses that rent cars to others for profit, and the inevitability that these vehicles will “become involved in their fair share of accidents”
 
 (id.
 
 at 263). Unlike restrictions placed on the use of an individual’s vehicle by a friend, we reasoned that restrictions by car rental agencies implicate more serious concerns as they affect the use of a large number of vehicles on our roads over potentially long time periods. Noting that any departure from such lease restrictions could leave an injured victim without the “recourse to a financially responsible defendant” contemplated by section 388, we found that “[t]he restrictions
 
 *381
 
 sought to be imposed by [the insurer] violate the public policy of this State”
 
 {id.
 
 at 264). Thus, the agency
 
 “knew
 
 or
 
 should have known
 
 that the probabilities of the car coming into the hands of another person were exceedingly great and in these circumstances they are to be charged with constructive consent, which satisfies the requirements of section 388 of the Vehicle and Traffic Law”
 
 {id.
 
 [emphasis added]). Constructive consent is an attempt to balance the policy goals of the statute and the realities of an automobile-based society.
 

 The linchpin to our finding of constructive consent in
 
 Motor Vehicle
 
 was the third-party driver’s
 
 permissive
 
 use vis-a-vis the lessee. Only because the lessee “gave his consent to [the third-party driver] to operate the rental vehicle [did] we find that he was operating it with the constructive consent of [the lessor] and, perforce, with the ‘permission’ envisioned by the provisions of section 388”
 
 {id.
 
 at 265). Absent the lessee’s consent, the third party’s operation would have been that of a thief— the antithesis of a permissive user. Indeed,
 
 Motor Vehicle
 
 sensibly recognized that none of the public policy concerns surrounding section 388 mandate absolute liability on the part of a car rental agency for operators who do so without the permission of any party in the chain of lawful possession. Thus,
 
 Motor Vehicle
 
 teaches us that a finding of constructive consent and its attendant liability under section 388 requires a consensual link between the negligent operator and one whose possession of the vehicle is authorized. Otherwise, implied consent under section 388 (1) would amount to strict liability — a result clearly at odds with the section and its purposes.
 

 Here, by permitting an employee’s use of its vehicle, B&W stands in a very different position than a car rental agency, which “rent[s] large numbers of vehicles to the general public for profit”
 
 (Motor Vehicle,
 
 35 NY2d at 263). While it is foreseeable that a rented vehicle would come into the hands of any number of operators by the very nature of the quasi-ownership relationship created by a lease, the bailment of a vehicle to an employee spawns a markedly different relationship with its own set of expectations. Indeed, an at-will employment relationship and the frequent contact between an employee and employer demand compliance with restrictions on vehicle operation placed on the employee. As a result of this relationship, it is reasonable for an employer to expect employees to comply with its use restrictions. Thus, allowing an employer explicitly to restrict those who may operate its vehicles, while simultaneously restricting its liability as an owner under Vehi
 
 *382
 
 cle and Traffic Law § 388, encourages careful selection of operators — the curative policy underpinning of the section. Even if Scicchitano had consented to Zimmerman’s use of the van, B&W’s employee handbook explicitly restricted those who may operate its vehicles and thereby rebutted the presumption of liability under Vehicle and Traffic Law § 388 (1).
 

 Unlike B&W’s role as a bailor-employer, however, PHH and the Trust are lessors of the van and therefore fall squarely within the public policy considerations discussed in
 
 Motor Vehicle.
 
 As such, they may not benefit as a matter of law from restrictions adopted by their lessee that they themselves could not use to limit their ownership liability under section 388. As noted above, lessor status is only half of the constructive consent equation in
 
 Motor Vehicle. As
 
 Murdza correctly points out, there exists a question of fact as to whether Zimmerman operated the vehicle with Scicchitano’s permission.
 
 [4]
 
 Whether PHH and the Trust constructively consented to Zimmerman’s use of the van depends not on the restrictions in B&W’s employee handbook, but on his status as either a thief or a permissive user.
 

 Accordingly, certified question No. 1 should be answered in the affirmative and certified question No. 2 in the negative.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Rosenblatt, Graffeo and Read concur.
 

 Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question No. 1 answered in the affirmative and certified question No. 2 answered in the negative.
 

 [1]
 

 . B&W’s employee handbook states: “Brown & Williamson authorizes only you [the employee] and your licensed spouse to use the Company vehicle for personal purposes * * * during off-duty hours, normal weekend driving, holidays and vacations providing the spouse has submitted a Form SA-5248, ‘Indemnification.’ ”
 

 [2]
 

 . None of the corporate defendants dispute the District Court’s determination that they are “owners” of the van as that term is defined in Vehicle and Traffic Law § 128.
 

 [3]
 

 . In support of what is now section 388, the Commissioner of the State Tax Department wrote, in a letter to the Governor’s counsel, that “[i]t is thought the enactment of this statute will cause owners to exercise greater care in the selection of drivers and prompt them to exercise greater diligence in the supervision of such drivers when so employed” (Bill Jacket, L 1924, ch 534, at 13). The City of New York Police Department also wrote to the Governor’s Counsel that “[t]his Bill, if it becomes law, will have a tendency to make the owners of motor vehicles exercise some degree of care in respect to the persons employed by them to operate such motor vehicles * * * This law should tend to make the owner of any motor vehicle closely investigate
 
 *380
 
 the character and habits of persons employed as chauffeurs, if not out of humane reasons then at least to protect his selfish interests” (Bill Jacket, L 1924, ch 534, at 12).
 

 [4]
 

 . Murdza testified to the following telephone conversation: “[Scicchitano] went on to tell me she would like to meet, possibly settle any damages without the insurance, involving the insurance company, because
 
 if the company found out she had loaned the vehicle to her boyfriend, that she would lose her
 
 job” (emphasis added).