(November 15, 2005)

■ GINA CONTE et al., Respondents, v PETER A. APREA et al., Respondents, and NISSAN MOTOR ACCEPTANCE CORPORATION, Appellant, et al., Defendant. [803 NYS2d 557]—

Order, Supreme Court, Bronx County (Patricia Anne Williams, J.), entered December 18, 2003, which, inter alia, denied defendant-appellant Nissan Motor Acceptance Corporation's (NMAC) motion for summary judgment dismissing the complaint and all cross claims and counterclaims asserted against it, affirmed, without costs.

Defendant Aprea was involved in a motor vehicle accident while driving a Nissan Pathfinder leased from defendant NMAC by defendant Ribaudo. The lease provided, "This Vehicle may not be used for any illegal purpose or to transport people or goods for hire. Except for occasional and incidental use by other licensed, qualified operators with your permission, you shall retain possession of this Vehicle." The evidence is uncontroverted that Aprea had Ribaudo's permission to drive the vehicle, and that, as far as Aprea knew, he was a licensed, qualified operator. As it happened, on the day of the accident, Aprea's license was suspended for failure to pay a traffic ticket. However, Aprea only learned of the suspension of his license after the accident, from the police officers who responded to the scene. In the five years since he had obtained it, his license had never before been suspended.

Vehicle and Traffic Law § 388 (1) provides that "[e]very owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner."

NMAC moved for summary judgment dismissing the complaint as against it on the ground that Aprea was an unlicensed driver, in breach of the lease agreement, and therefore not a permissive user of the vehicle within the meaning of section 388. The court denied the motion, holding that the lease provision limiting use of the vehicle to licensed drivers is unduly restrictive and against public policy in the instant circumstances, where it is uncontested that Ribaudo neither knew nor should have known that Aprea's license was suspended. We affirm on different grounds.

To hold that NMAC has not demonstrated its entitlement to summary judgment as a matter of law, we need not find that a lease provision limiting use of a vehicle to licensed drivers is against public policy.

At the outset, it should be noted that defendant moved for summary judgment on the ground that Aprea was an unlicensed driver. However, Aprea was, in fact, a licensed driver in the sense that he had successfully demonstrated the skills and ability necessary to operate a motor vehicle under the State's licensing law. It is highly questionable, therefore, whether suspension of a license for failure to pay a traffic ticket may be construed as a breach of the "licensed" requirement in the lease.

To the extent that the lease provision reflects state law that

makes it an offense to "operate[ ] a motor vehicle upon a public highway while knowing or having reason to know that [one's] license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner" (Vehicle and Traffic Law § 511 [1] [a]), we hold that public policy requires that the statutory element of knowing or having reason to know that one's license is suspended be deemed to be implicit in the lease's limiting provision (see *Motor Veh. Acc. Indem. Corp. v Continental Natl. Am. Group Co.*, 35 NY2d 260, 264-265 [1974]). It is significant in this regard that suspension of a license for failure to pay a fine carries with it a notice requirement (see e.g. Vehicle and Traffic Law § 510 [4-a] [a] ["Such suspension shall take effect no less than thirty days from the day upon which notice thereof is sent by the commissioner to the person whose driver's license or privileges are to be suspended"]).

In construing the lease provision, we must also weigh the import of Vehicle and Traffic Law § 388, which expresses the policy that "one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant" (*Motor Veh. Acc. Indem. Corp.*, 35 NY2d at 264). Obviously, precluding liability on the part of the lessor in a case such as this does not further that policy. Nor, where the owner neither knew nor had reason to know that the driver's license was suspended, does it further the equally important policy of encouraging owners to exercise a heightened degree of care when selecting and supervising drivers whom they permit to operate their vehicles (see *Murdza v Zimmerman*, 99 NY2d 375, 379 [2003]).

· If section 388 "simultaneously increases the likelihood of compensation for those injured in motor vehicle accidents and decreases the probability of such accidents by encouraging an owner's prudent selection of drivers" (*Murdza* at 379), then the significance of a driver's license to an owner trying to select drivers prudently is as a credential of a certain level of skill in operating a vehicle. Thus, precluding liability on the part of the lessor where, as here, the driver's license is suspended for failure to pay a ticket, not for inability to operate a motor vehicle, does not further the goal of decreasing the probability of motor vehicle accidents. Concur—Andrias, Ellerin and Nardelli, JJ.

Tom, J.P., dissents in a memorandum as follows: A lease provision restricting use of the vehicle to "licensed, qualified operators" is reasonable, consistent with New York State law, promotes the strong public policy favoring freedom of contract

and advances the legislative policy of heightening the degree of care owners are encouraged to exercise when selecting and supervising drivers whom they permit to operate their vehicles. Therefore, I respectfully dissent and would grant defendant Nissan Motor Acceptance Corporation's (NMAC) dismissal motion.

Defendant Ribaudo leased a 1998 Nissan Pathfinder from defendant NMAC. The lease provides, "This Vehicle may not be used for any illegal purpose or to transport people or goods for hire. Except for occasional and incidental use by other licensed, qualified operators with your permission, you shall retain possession of this Vehicle."

The Pathfinder was borrowed on May 13, 2001 by defendant Aprea, allegedly "to pick up some food supplies for Mother's Day." While driving in the Bronx, Aprea collided with a Dodge Stratus being operated by plaintiff Frank Conte, causing serious injury to his passenger, plaintiff Gina Conte. It is uncontroverted that, on the date of the accident, Aprea was driving with a suspended license, that he was arrested for this offense (Vehicle and Traffic Law § 511) and that he subsequently pleaded guilty to a violation in satisfaction of the charge against him.

NMAC moved to dismiss the complaint as against it on the basis of the limitation contained in its lease with Ribaudo. Supreme Court denied the motion, holding that the provision limiting use of the vehicle to licensed drivers is unduly restrictive and against public policy.

Vehicle and Traffic Law § 388 (1) provides, in relevant part, that "[e]very owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle . . . by any person using or operating the same with the permission, express or implied, of such owner." The statute creates a rebuttable presumption that a vehicle is being operated with the permission of the owner (*Morris v Snappy Car Rental*, 84 NY2d 21, 27 [1994]) and supplants the common law rule that a vehicle owner may only be held liable for the negligence of a permissive driver under a theory of either respondeat superior or agency (*id.* at 27, citing *Plath v Justus*, 28 NY2d 16, 20 [1971] and *Rolfe v Hewitt*, 227 NY 486 [1920]). As the Court of Appeals stated, "It is axiomatic concerning legislative enactments in derogation of the common law, and especially those creating liability where none previously existed, that they are deemed to abrogate the common law only to the extent required by the clear import of the statutory language" (*Morris* at 28). Thus, "we are to narrowly construe the terms of section 388" (*id.*).

The primary goal of the statute is "to ensure access by injured persons to 'a financially responsible insured person against whom to recover for injuries' " (*id.* at 27, quoting *Plath*, 28 NY2d at 20). Another policy reflected in the statute "is the heightened degree of care owners are encouraged to exercise when selecting and supervising drivers permitted to operate their vehicles" (*Murdza v Zimmerman*, 99 NY2d 375, 379 [2003]). Yet a third consideration is "freedom of contract, which is itself deeply rooted in public policy" (*Morris*, 84 NY2d at 29).

The public policy concerns surrounding the interpretation of Vehicle and Traffic Law § 388 were addressed in *Morris*, which is dispositive of the issues presented on this appeal. Here, as in *Morris*, the operative question is whether the limitation of the lessor's liability under the lease instrument is consistent with legislative intent in enacting the statute.

It is contrary to the primary goal of Vehicle and Traffic Law § 388 to employ restrictions and conditions in the lease to evade liability altogether, that is, to deprive the injured party of recourse to a financially responsible insured person (*Morris* at 29). However, where, as here, the lessee is covered by liability insurance required by the statute and is therefore a financially responsible insured person, a condition of the lease that relieves the lessor of liability does not conflict with statutory intent (*id.* [hold harmless provision]). Thus, plaintiffs' assertion that the lease restriction renders them "devoid of adequate protection" must be rejected.

The contention that the lease restriction is unreasonable is equally unavailing. "The owner may, of course, restrict the use of the car when in the hands of another" (*Burmaster v State of New York*, 7 NY2d 65, 70 [1959]); "such restriction, if violated, would mean that the vehicle was being driven without the owner's permission" (*Aetna Cas. & Sur. Co. v Brice*, 72 AD2d 927, 928 [1979], *affd* 50 NY2d 958 [1980]). A lease provision confining the operation of a motor vehicle to qualified, licensed drivers is reasonable and merely reflects state law (Vehicle and Traffic Law § 511 [1] [a]).[1] It is beyond question that a lease provision precluding use of a vehicle for an illegal purpose is a reasonable restriction of operation (*see Aetna Cas. & Sur. Co. v*

---

1. A person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the third degree when such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner.

*Liberty Mut. Ins. Co.*, 91 AD2d 317, 322-323 [1983] [absent restriction in lease, use of truck to transport explosives was legal and permissive]). The contract's prohibition against use by a driver who does not possess the requisite effective license to legally operate the vehicle merely identifies a specific illegal use, in violation of Vehicle and Traffic Law § 509 (1),[2] that is explicitly forbidden under the terms of the lease. Thus, the restriction is clearly not offensive to public policy (*see Hannibal v Kimbeni*, 289 AD2d 446 [2001] [prohibition against use of vehicle as public conveyance was a reasonable and realistic restriction]).

Upholding the restriction on the use of the leased vehicle to a licensed, qualified driver promotes the objective of encouraging care in the selection and supervision of those who are permitted to operate it (*Murdza*, 99 NY2d at 379). Ribaudo does not dispute that he is bound by the terms of the lease and its use restriction, which is not conditioned upon the lessee's knowledge of the operator's status. While both lessee and operator argue that they were unaware that Aprea's license had been suspended, that fact (if true) is merely fortuitous. The statutory objective will not be advanced by permitting a lessee to pass part, or even most, of the liability for any injuries resulting from the negligent operation of the vehicle to the lessor by utilizing the simple expedient of maintaining that he failed to inquire about the operator's driver's license and qualifications. If ignorance is to be considered a valid defense, a lessee can avoid any restriction contained in the governing vehicle lease agreement by simply maintaining that he had no reason to know about the facts constituting its breach.

The obligation to ascertain whether a driver who will operate a leased vehicle possesses the requisite qualifications and a valid driver's license is properly imposed upon the lessee, who agreed to these conditions under the lease. Even accepting defendants' allegations concerning lack of knowledge as true for the purpose of summary judgment, Ribaudo, as lessee, was in a far superior position to control access to the vehicle than a lessor that had no opportunity to monitor the vehicle's operation and use (*see Brindley v Krizsan*, 18 AD2d 971 [1963], *affd* 13 NY2d 976 [1963] [driver's unlicensed status does not relieve person who permitted him to operate vehicle from liability]). Conversely stated, subjecting a lessor to liability for the unlaw-

---

**2.** Vehicle and Traffic Law § 509 (1) provides, in relevant part, that, except for a road test, "no person shall operate or drive a motor vehicle upon a public highway of this state . . . unless he is duly licensed pursuant to the provisions of this chapter."

ful use of a vehicle over which it has no control does not promote the statutory objective (see *Fried v Seippel*, 80 NY2d 32, 41 [1992] [declining to give extraterritorial effect to section 388 because accident only fortuitously involved New York drivers and such effect therefore would not promote statutory objective of ensuring that New York owners act responsibly]).

Finally, the restriction of use in the governing lease to "licensed, qualified operators" cannot be ignored on the reasoning, adopted by the majority, that Aprea's license was merely suspended and that he was otherwise a qualified driver. A contract is to be construed so as to give effect to each and every part (*Ruttenberg v Davidge Data Sys. Corp.*, 215 AD2d 191, 195-196 [1995]). The lease cannot be construed as simply restricting use to "qualified" drivers without rendering the word "licensed" mere surplusage, in contravention of the well-settled rule of contract construction. Thus, the use of the word "licensed" in the lease can only be interpreted to require the operator to have a valid driver's license. To construe "license" to include a suspended operator's license, as the majority urges, would render the term meaningless, as it is used in the lease agreement, and would result in an absurd construction of the term as it is used in the Vehicle and Traffic Law (*Matter of Chatlos v McGoldrick*, 302 NY 380, 387-388 [1951]; *Matter of New York City Asbestos Litig.*, 188 AD2d 214, 218 [1993], *affd* 82 NY2d 821 [1993] *for reasons stated below*; McKinney's Cons Laws of NY, Book 1, Statutes § 145).[3] It should also be noted that defendants have studiously avoided revealing the reason for the issuance of the traffic ticket that Aprea failed to pay, resulting in the license suspension.

Accordingly, the motion to dismiss the complaint and all cross claims and counterclaims as against defendant NMAC should be granted.

---

3. Operation of a vehicle without a valid driver's license is a basis for impounding the vehicle (*People v Johnson*, 254 AD2d 500, 501 [1998], *lv denied* 93 NY2d 972 [1999]).