■ PAULINA CREINIS, Respondent, v HANOVER INSURANCE COMPANY, Appellant. [872 NYS2d 544]—

In an action pursuant to Insurance Law § 3420 (a) (2) to recover an unsatisfied judgment against the defendant's insured, the defendant appeals from (1) so much of an order of the Supreme Court, Kings County (Schmidt, J.), dated January 3, 2006, as denied its motion pursuant to CPLR 3124 and 3126 to compel certain discovery or, in the alternative, to preclude the plaintiff from adducing certain evidence at trial, (2) an order of the same court dated March 2, 2006, which granted the plaintiff's motion for summary judgment on the complaint and, in effect, denied its cross motion for summary judgment dismissing the complaint, and (3) a judgment of the same court dated April 14, 2006, which, upon the order dated March 2, 2006, is in favor of the plaintiff and against it in the principal sum of $800,000.

Ordered that the appeals from the orders dated January 3, 2006 and March 2, 2006 are dismissed, without costs or disbursements; and it is further,

Ordered that the judgment is modified, on the law, by deleting the provision thereof which is in favor of the plaintiff and against the defendant in the principal sum of $800,000, and substituting therefor a provision which is in favor of the plaintiff and against the defendant in the principal sum of $25,000; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for the entry of an appropriate amended judgment.

The appeals from the intermediate orders must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeals from the orders are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501 [a] [1]).

On January 16, 2000 the plaintiff, while driving her own vehicle, was struck and injured by a vehicle (hereinafter the Fashina vehicle) operated by Olatoyin Fashina and owned by Olatoyin Fashina, Inc. (hereinafter together the Fashinas). The plaintiff demanded an uninsured motorist arbitration against her own insurer, but that insurer petitioned to stay the arbitration on the ground that the Fashinas and the Fashina vehicle were

insured by the defendant, Hanover Insurance Company (hereinafter Hanover). The petition relied upon the facts that the police accident report pertaining to the collision listed an insurance code corresponding to Hanover as the insurer of the Fashina vehicle, and that an "Accident Information Exchange Report" also identified Hanover as the insurer. Hanover was joined as a named respondent in the proceeding to stay arbitration and was duly served with the notice of petition and petition, but failed to appear or answer. Accordingly, in an order dated November 8, 2002, entered upon Hanover's default, the Supreme Court, Kings County (Dabiri, J.) permanently stayed the arbitration, finding in part that, "based on the evidence submitted to the Court, the vehicle operated by Olatoyin M. Fashina and owned by Olatoyin Fashina, Inc. was insured by [Hanover]."

Thereafter, Hanover moved to vacate the order entered upon its default, claiming, inter alia, that it never insured the Fashinas or the Fashina vehicle. In an order dated July 9, 2003, the court granted the motion, vacated the default, and referred the matter to a Judicial Hearing Officer to determine the issue of coverage. However, on the appeal by the plaintiff's insurer, this Court, in a decision and order dated June 7, 2004, reversed the order dated July 9, 2003 and reinstated the order dated November 8, 2002 entered on Hanover's default, finding that Hanover "failed to demonstrate a reasonable excuse for its default" (*Matter of Hartford Ins. Co. of Midwest v Creinis,* 8 AD3d 381 [2004]).

Meanwhile, by the filing of a summons and complaint on December 30, 2002 the plaintiff commenced an action to recover damages for her personal injuries against the Fashinas. Notwithstanding letters sent by the plaintiff's counsel to the attorneys representing Hanover on the appeal from the order dated July 9, 2003, Hanover did not provide legal counsel to defend the Fashinas, who failed to appear in the action. Accordingly, the plaintiff moved for leave to enter a default judgment on the issue of liability against the individual operator Olatoyin Fashina. In an order dated June 25, 2004, the Supreme Court, Kings County (M. Garson, J.), granted the motion, and an inquest to assess damages was scheduled for October 28, 2004. The inquest did not take place until February 22, 2005, well after this Court reinstated the order dated November 8, 2002, which both stayed arbitration and determined that Hanover was the insurer of the Fashina vehicle. Nevertheless, and notwithstanding the provision of notice of the inquest to Hanover, once again no one appeared on behalf of Olatoyin

Fashina, who again defaulted. The inquest culminated in a judgment dated May 13, 2005 in favor of the plaintiff and against Olatoyin Fashina in the principal sum of $800,000. The judgment with notice of entry was served upon Hanover, but was not paid.

On or about July 12, 2005 the plaintiff commenced this action pursuant to Insurance Law § 3420 (a) (2) against Hanover to recover the amount of the unsatisfied judgment. Hanover answered the complaint and asserted, as an affirmative defense, inter alia, that it never issued a policy of insurance to the Fashinas. Following some preliminary motion practice, the plaintiff moved for summary judgment on the complaint and Hanover cross-moved for summary judgment dismissing the complaint. The Supreme Court, Kings County (Schmidt, J.), granted the plaintiff's motion in an order dated March 2, 2006. A judgment dated April 14, 2006, in the principal sum of $800,000 was entered in favor of the plaintiff and against Hanover, and Hanover appeals.

Contrary to Hanover's contention, the Supreme Court properly imposed liability against it. "Insurance Law § 3420 grants an injured plaintiff the right to sue a tortfeasor's insurance company to satisfy a judgment obtained against the tortfeasor" (*Lang v Hanover Ins. Co.,* 3 NY3d 350, 352 [2004]). The action may be maintained following a 30-day waiting period after service upon the insurer of the judgment with notice of entry, assuming the insurer does not satisfy the judgment in the interim (*see* Insurance Law § 3420 [a] [2]). "Once the statutory prerequisites are met, the injured party steps into the shoes of the tortfeasor and can assert any right of the tortfeasor-insured against the insurance company" (*Lang v Hanover Ins. Co.,* 3 NY3d at 355).

Here, the plaintiff made a prima facie showing of entitlement to judgment as a matter of law under Insurance Law § 3420 (a) (2) (*see generally Alvarez v Prospect Hosp.,* 68 NY2d 320 [1986]). Certainly she proved the existence of an unsatisfied judgment in her favor in the underlying action to recover damages for personal injuries (*see Lang v Hanover Ins. Co.,* 3 NY3d 350 [2004]). However, Hanover contends that it never issued a policy to Olatoyin Fashina, Inc., and never covered the vehicle which struck the plaintiff. Therefore, Hanover reasons that the plaintiff is barred from any recovery because she cannot make the requisite showing that, "at the time of the accident, there was in full force and effect an agreement of insurance between the insurer and the judgment debtor covering the latter for the liability merged in the judgment" (*Holmes v Allstate Ins. Co.,*

33 AD2d 96, 98 [1969]). This contention is unpersuasive, since Hanover's position has already been rejected by this Court in the factually indistinguishable case of *Kleynshvag v GAN Ins. Co.* (21 AD3d 999 [2005]).

In *Kleynshvag,* decided by this Court slightly more than three years ago, the plaintiff was struck and injured, as here, by a vehicle operated by one person and owned by another. As here, the injured party sought uninsured motorist benefits against his own insurer, and that insurer sought to permanently stay the uninsured motorist arbitration on the ground that another carrier, GAN Insurance Company (hereinafter GAN), was the insurer of the offending vehicle. Like Hanover herein, GAN was given notice of the proceeding to stay arbitration and failed to appear. As in this case, the Supreme Court issued an order, upon GAN's default, staying the arbitration and finding that GAN was the insurer of the subject vehicle and, like Hanover here, GAN unsuccessfully attempted to vacate its default. As here, the injured party commenced a personal injury action against the owner and operator of that vehicle, and GAN, like Hanover, declined to participate despite having notice of the action. As here, the personal injury action culminated in the entry of a default judgment against the vehicle operator, and an inquest to assess damages, at which the operator did not appear, resulted in the entry of a substantial money judgment in favor of the injured party and against the defaulting operator. The injured party then sought to enforce the unsatisfied judgment against GAN pursuant to Insurance Law § 3420 (a) (2). As Hanover did here, GAN contended, in opposition to the injured party's motion for summary judgment on the complaint, that it did not issue an insurance policy covering the owner or operator of the subject vehicle. As here, the Supreme Court granted the injured party's motion for summary judgment on the complaint, and the matter was appealed to this Court.

In upholding the imposition of liability against GAN, this Court observed, in an analysis equally applicable to the case at bar, that since the Supreme Court had determined in the proceeding to stay arbitration that GAN insured the offending vehicle, GAN was "collaterally estopped from litigating the issue of coverage, even though that issue was initially determined on its default in the arbitration" (*Kleynshvag v GAN Ins. Co.,* 21 AD3d at 1003). This Court further reasoned that the preclusive effect of that determination satisfied the injured party's burden of demonstrating his entitlement to summary judgment pursuant to Insurance Law § 3420 (a) (2).

In view of our recent precedent in *Kleynshvag,* decided under

facts nearly identical to those at bar, we are compelled to find that the plaintiff has sustained her burden under Insurance Law § 3420 (a) (2) in this case. Hanover was made a party to the proceeding to stay arbitration of the uninsured motorist claim and inexcusably failed to participate in that proceeding. As a result, the Supreme Court determined, upon Hanover's default, that Hanover extended insurance coverage to the subject vehicle. Accordingly, under the circumstances, Hanover is collaterally estopped from litigating the issue of such coverage at this juncture, since that question was already determined adversely to it in the proceeding to stay arbitration—a proceeding in which it had a full and fair opportunity to appear and litigate—and the application of collateral estoppel is neither unwarranted nor unfair under the facts presented (see *Kleynshvag v GAN Ins. Co.*, 21 AD3d 999 [2005]; see also *Matter of Aisle Natl. LLC v K&E Mech., Inc.*, 29 AD3d 901 [2006]; *Chai Props. Corp. v Carb, Luria, Glassner, Cook & Kufeld*, 288 AD2d 44 [2001]; *Harris v Stein*, 207 AD2d 382 [1994]; cf. *Gaston v American Tr. Ins. Co.*, 11 NY3d 866 [2008] [application of collateral estoppel is inappropriate where there are conflicting judgments on the coverage issue at the trial level]).

However, with regard to the issue of the amount to be awarded to the plaintiff, we find that the plaintiff's recovery must be limited to the sum of $25,000, which is the statutory minimum coverage required by Vehicle and Traffic Law § 311 (4) (a). In *Kleynshvag,* this Court recognized that a situation could arise where an insurer, by reason of a prior default, might be found liable for an unsatisfied judgment pursuant to Insurance Law § 3420 (a) (2), yet might also be able to prove either that it had no policy of insurance in effect covering the subject accident, or that any policy which was in effect had a coverage limit lower than the amount of the unsatisfied judgment. In order to avoid the imposition of an undue financial burden upon the insurer in such a situation, this Court left open the door in *Kleynshvag* to the receipt of such evidence, not to relieve the defaulting insurer of liability altogether, but to reduce its exposure on the judgment. However, this Court further reasoned that "[s]ince a limitation on an insurer's liability . . . may frustrate the policy of this State that victims of motor vehicle accidents receive compensation for their injuries, we conclude that [the insurer] carries the burden of proving the limit of the relevant coverage" (*Kleynshvag v GAN Ins. Co.*, 21 AD3d at 1004). Moreover, where an insurer can demonstrate that no coverage at all was in effect for the accident, its exposure will be limited to the statutory minimum coverage for personal injury liability, which is fixed in the sum of $25,000 pursuant to Vehi-

cle and Traffic Law § 311 (4) (a), a relatively paltry price for its default in the proceeding to stay the uninsured motorist arbitration—the very default which occasioned all of the ensuing litigation and the corresponding delay in the injured plaintiff's monetary recovery.

Unlike the insurer in *Kleynshvag,* who failed to sustain its burden with regard to the monetary limit of its policy, Hanover has met its burden in this case. Indeed, Hanover came forward with extensive evidence of multiple exhaustive searches of different databases conducted by different Hanover personnel, using both the name of the purported insured and the vehicle identification number of the subject vehicle. Those searches revealed that no policy was issued by Hanover covering the owner, operator, or vehicle involved in this case at the time of the accident. Accordingly, Hanover's liability should be limited to the amount statutorily fixed as the minimum coverage required for personal injury liability.

The arguments propounded by the dissent are precisely those which were already considered and rejected by this Court in its recent resolution of the *Kleynshvag* appeal. Accordingly, we find them unpersuasive.

In this regard, the Supreme Court's finding in the proceeding to stay the uninsured motorist arbitration that the subject vehicle in this case was insured by Hanover necessarily entailed a determination that insurance coverage was afforded to its owner Olatoyin Fashina, Inc. Moreover, it is axiomatic that there is a strong presumption that one who uses a motor vehicle does so with the owner's permission, thereby resulting in liability for the negligence of the operator unless that presumption is rebutted (*see* Vehicle and Traffic Law § 388; *Murdza v Zimmerman,* 99 NY2d 375 [2003]; *Murphy v Carnesi,* 30 AD3d 570 [2006]). Significantly, that presumption has not been challenged in this case, nor could a realistic challenge to the presumption of permissive use be mounted here, given that the owner of the vehicle was Olatoyin Fashina, Inc., and the operator was Olatoyin Fashina. Since the Insurance Law mandates that automobile liability coverage be extended to permissive users (*see* Insurance Law § 3420 [e]; *Jefferson Ins. Co. of N.Y. v Travelers Indem. Co.,* 92 NY2d 363, 375 [1998]), the plaintiff was entitled to seek recovery from Hanover for the negligence of the operator.

Furthermore, while the dissent expresses concern that our conclusion creates a "windfall" for the plaintiff's uninsured motorist carrier by shifting liability for the plaintiff's injuries to Hanover, we are far more concerned that the injured plaintiff have recourse to a viable avenue of recovery. Indeed, the plaintiff

sought to obtain uninsured motorist benefits from her own carrier in the first instance. However, Hanover foreclosed any possibility that she might obtain such benefits by its inexcusable default in the proceeding to stay arbitration. That default led to a determination that Hanover was the insurer of the Fashina vehicle, and thereby rendered uninsured motorist benefits unavailable to the plaintiff. Were we now to hold that Hanover should not be bound by that determination and instead should be free to contest the issue of whether it provided coverage, then the plaintiff would not be able to obtain uninsured motorist benefits from her own insurer because that arbitration has been permanently stayed as a result of Hanover's default, and she likewise would be unable to seek recovery from Hanover because it did not have a policy in effect which covered the accident. Such a result would be untenable. As between denying any recovery to the injured and innocent plaintiff or imposing the statutory minimum liability against the inexcusably defaulting Hanover, we have no difficulty in choosing the latter. It was Hanover's obligation to present evidence of noncoverage in response to the prima facie showing of coverage made in the proceeding to stay the uninsured motorist arbitration. Having instead defaulted, Hanover ran the risk that its default would prevent it from subsequently denying the existence of coverage, a result which has now come to pass. We see no reason under these circumstances to come to Hanover's rescue at this late stage.

Finally, the Supreme Court providently exercised its discretion in denying Hanover's motion to compel certain discovery or, in the alternative, to preclude the plaintiff from adducing certain evidence at trial (see D'Ambrosio v 85 Crystal Run Co., 37 AD3d 757 [2007]; Casabona v Huntington Union Free School Dist., 29 AD3d 723 [2006]; Milbrandt & Co., Inc. v Griffin, 19 AD3d 663 [2005]).

Hanover's remaining contentions are without merit. Mastro, J.P., Santucci and Florio, JJ., concur.

Carni, J. (concurring in part and dissenting in part and voting to the dismiss the appeals from the orders dated January 3, 2006 and March 2, 2006, respectively, reverse the judgment dated April 14, 2006, deny the plaintiff's motion for summary judgment on the complaint, grant the defendant's cross motion for summary judgment dismissing the complaint, dismiss the complaint, and modify the order dated March 2, 2006 accordingly, with the following memorandum): In my view, the plaintiff in this action failed to meet her burden of proof under Insurance Law § 3420 (a) (2) by establishing a "judgment against the

insured," the "terms of the policy or contract" of insurance, and "the amount of the applicable limit of coverage under such policy or contract." I, therefore, respectfully concur in part and dissent in part.

It is well settled that an action by a judgment creditor against a liability insurer exists on the basis of a special statutory provision and, as therein provided, is dependent upon the "terms of the policy or contract" with the insured (*Holmes v Allstate Ins. Co.*, 33 AD2d 96, 98 [1969]). Accordingly, I agree that the judgment creditor bears the burden of proving, prima facie, that there was an agreement of insurance in full force and effect between the insurer and the judgment debtor, covering the latter for the liability that is merged into the judgment.

Importantly, the plaintiff, like Hanover, did not appear in the proceeding to permanently stay arbitration of the plaintiff's claim for uninsured motorist benefits (hereinafter the uninsured motorist proceeding), but subsequently joined in Hanover's attempt to vacate the order entered on default, which found the offending vehicle to be insured by Hanover. In fact, the plaintiff represented to the court, in her submissions in support of Hanover's attempt to vacate its default in the prior uninsured motorist proceeding, that "Hanover insurance is not the insurer of the tortfeasor Olatoyin Fashina. Insurance coverage cannot be created where none exists." Presently, in a remarkable turnabout, and in apparent recognition of her statutory burden of proof, the plaintiff now alleges in her verified complaint in this subsequently-commenced action pursuant to Insurance Law § 3420 (a) (2), that "the Fashina insureds duly paid to the defendant [Hanover] all premiums due upon the policy of insurance sued upon." However, the plaintiff indeed knows, as does everyone else involved in this case, that no such policy ever existed.[1] Moreover, the plaintiff does not dispute that, following an exhaustive search, Hanover again established in this action that it never issued a policy of insurance to the operator or owner of the vehicle.

Notwithstanding this undisputed fact, and in reliance upon the prior determination in the uninsured motorist proceeding that the "vehicle operated by Olatoyin Fashina and owned by Olatoyin Fashina, Inc., was insured by Hanover," the majority's conclusion utilizes a fiction to find that a policy of insurance was issued by Hanover to the owner. Without reference to any

---

1. The plaintiff's uninsured motorist insurer, Hartford Insurance Company of the Midwest, will receive a windfall as a result of the majority's conclusion. Hartford will have avoided its obligation to pay uninsured motorist benefits to the plaintiff under a policy that clearly does exist.

policy terms and conditions, the fiction is extended by the conclusion that the nonexistent policy also provided coverage for the operator, Olatoyin Fashina.

The uninsured motorist proceeding did not identify the existence of a policy, the terms and conditions thereof, or the limits of coverage. These issues simply were not, and did not need to be, litigated.[2] Instead, it simply resulted in the limited conclusion, solely for uninsured motorist purposes, that the vehicle was insured by Hanover. The limited scope and nature of the quality of proof necessary to reach that result for that limited purpose is precisely why it is insufficient in an action commenced pursuant to Insurance Law § 3420 (a) (2). In the uninsured motorist context, a police report and a registration record from the New York State Department of Motor Vehicles (hereinafter the DMV) can support a prima facie showing sufficient to deny uninsured motorist benefits (*see Matter of Allstate Ins. Co. v Anderson,* 303 AD2d 496 [2003]). A copy of a police accident report reciting the insurance code of the "offending vehicle" has been held prima facie sufficient to stay the arbitration of a claim for uninsured motorist benefits (*see Matter of Government Empls. Ins. Co. v Williams-Staley,* 288 AD2d 471 [2001]). In other words, in the uninsured motorist context, the carrier seeking to avoid paying these benefits to its insured need only raise the specter of insurance coverage, and the carrier is not required to establish the existence of a policy, the terms and conditions thereof, or coverage limits. Had the plaintiff in this action moved for summary judgment armed only with a copy of a police report with the insurance code or a DMV registration record, I submit that we would summarily deny such an unsubstantiated claim for relief under Insurance Law § 3420 (a) (2).[3] Indeed, such a paucity of evidence would be insufficient to sustain a claim for *underinsured* benefits where the tortfeasor's policy limits are an essential element of the analysis (*see* 11 NYCRR 60-2.3 [f] [I] [c] [3]).

Further, I respectfully submit that offending vehicles are not

**2.** I have no reservations about the application of the doctrine of collateral estoppel, in a general sense, to the prior determination. In my view, however, that which was determined in the uninsured motorist proceeding is not dispositive in satisfying the plaintiff's statutory burden of proof under Insurance Law § 3420 (a) (2) or preclusive of Hanover's defense, in this statutory action, that no policy was ever issued.

**3.** In this case, the uninsured motorist carrier only submitted a police accident report with the insurance code for Hanover and an unsigned accident information exchange report. Notably, the response of the Director of Motor Vehicles for the State of New Jersey to Hartford's insurance information request indicated that "Prudential Ins" was the insurer under a policy which listed the subject vehicle as a covered vehicle.

"insureds" embraced within the clear language of Insurance Law § 3420 (a) (2). The term "insured," as used in the Insurance Law, has a specific meaning and describes a party to a contract with an "insurer" (*see* Insurance Law § 1101 [a]). An automobile may or may not be a "covered vehicle," depending upon whether it is so designated in the policy issued to the owner-insured (*see Fesko v New York Cent. Mut. Fire Ins. Co.*, 8 AD3d 615 [2004]). Under certain conditions contained in the terms and conditions of the policy, operators of "covered vehicles" may be "insureds" under the policy, but vehicles are simply not "insureds" within the meaning of Insurance Law § 1101 (a) or § 3420 (a) (2). It is the owner-insured who is entitled to indemnification for liability arising out of the ownership, maintenance, and use of a motor vehicle identified within the policy as a "covered vehicle." Here, there is no dispute that an "owner's policy of liability insurance" (Vehicle and Traffic Law § 311 [4]) was never issued to the identified owner of the vehicle. In this case, the corporate owner is neither an "insured" nor a judgment debtor. The undisputed facts of this case establish that the operator-judgment debtor is not an "insured" under any policy issued by Hanover.

I also submit that the sanctioning of the continued use of the inaccurate and improper concept and terminology of an "offending vehicle" being insured in analyzing Insurance Law § 3420 (a) (2) actions is misplaced. The prior determination in the uninsured motorist proceeding that the offending vehicle was insured did not establish that the judgment debtor-operator was an "insured" under the terms and conditions of an owner's policy of liability insurance issued to an "insured," as statutorily required by Insurance Law § 3420 (a) (2).[4] A finding that a "vehicle" was insured, without identification of the applicable policy, terms and conditions, or coverage limits, is, in my view, wholly insufficient to establish a prima facie case under Insurance Law § 3420 (a) (2).

---

**4.** While the superficial finding that an "offending vehicle" was insured may serve the limited purpose of obtaining a stay of arbitration of a claim for uninsured motorist benefits, it is quite another thing to say that such a limited and unrefined determination establishes the essential and statutorily precise elements of a cause of action expressly required under Insurance Law § 3420 (a) (2). I recognize that regulation 35-D, Supplementary Uninsured Motorist Insurance (11 NYCRR 60-2.3) utilizes the term "uninsured motor vehicle" (11 NYCRR 60-2.3 [f] [I] [c]; [II], [III] [condition 12]). However, the definition of this term within that regulation includes a vehicle with or without "a bodily injury liability insurance policy . . . [which] applies to such vehicle" (11 NYCRR 60-2.3 [f] [I] [c] [1]). In other words, use of the term "uninsured motor vehicle," standing alone, does not resolve the question of whether a *policy* existed or not. Similarly, the finding that a vehicle is insured in the uninsured motorist benefits context is equally unavailing on this issue.

I also find the majority's conclusion contrary to the well-established body of law relating to actions by a judgment creditor against a judgment debtor's insurer. "The rule is well settled that a judgment creditor seeking to enforce a policy insuring the judgment debtor against liability, stands in the shoes of the assured and can recover against the insurer only if the assured could recover under the terms of the policy" (*Wenig v Glens Falls Indem. Co.*, 294 NY 195, 198-199 [1945]; *see D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 665 [1990]). In this case, I submit that it may not be seriously contended that the judgment debtor, assuming she had paid the judgment against her, and if armed solely with the general finding that the vehicle she was operating was insured by Hanover, could obtain summary judgment against Hanover and receive indemnity in a declaratory judgment or breach of contract action under the "terms and conditions" of a nonexistent policy.

Moreover, in the context of a motion for summary judgment in an action against an insurer to recover an unsatisfied judgment, this Court has repeatedly denied relief to both insured and insurer for failure to include a copy of the subject policy in their submissions to the motion court (*see Empire Ins. Co. v Insurance Corp. of N.Y.*, 40 AD3d 686 [2007]; *Guishard v General Sec. Ins. Co.*, 32 AD3d 528 [2006], *affd* 9 NY3d 900 [2007]; *Zurich Am. Ins. Co. v Argonaut Ins. Co.*, 204 AD2d 314 [1994]). In all of these decisions, this Court recognized that the existence and submission of the policy were essential elements of the movant's burden of proof. As one commentator has recently noted, "the practice of seeking affirmative relief based upon specific policy provisions without providing the court with proof that the provision actually exists is a dangerous, and indeed, reckless one, upon which the courts clearly frown" (Dachs, Insurance Law, *Importance of Providing the Policy to the Court*, NYLJ, Nov 2, 2007, at 3, col 1, at 6, col 4).

I also cannot join in further enhancing and refining the fiction by finding that a policy that clearly does not exist, in effect, had coverage limits in the sum of $25,000. Even assuming the prima facie sufficiency of the prior determination that the vehicle was insured, in similar circumstances this Court concluded that the insurer carried the burden, and by necessity therefore had the opportunity, of proving the limit of the relevant coverage (*see Kleynshvag v GAN Ins. Co.*, 21 AD3d 999 [2005]). In *Kleynshvag,* the insurer failed to carry this burden. It would seem only logical that if an insurer could offer evidence of the limits of its policy (*see Kleynshvag v GAN Ins. Co.*, 21 AD3d 999 [2005]), it should be afforded the opportunity to offer evidence,

as Hanover has done conclusively here, that the limits of coverage are zero because there simply is no policy at all.

Lastly, I cannot agree to transcend the express statutory language and conclude, in the face of undisputed evidence that no policy was ever issued, that the judgment entered solely upon the default of the operator allows for fictional findings that an "owner's policy of liability insurance" was issued to the owner, such nonexistent policy provided coverage to the operator, and the applicable coverage limit was $25,000. Indeed, in my view the judgment creditor's attempt to collect a judgment in the sum of $930,340 against an insurer she very well knows, and has previously conceded through judicial admissions, never issued a policy insuring the tortfeasor, makes "a mockery of the truth-seeking function" of this Court (*Festinger v Edrich*, 32 AD3d 412, 413 [2006]). Denial of this relief is warranted, if for no other reason than "as a matter of public policy to protect the integrity" of this Court (*see Festinger v Edrich*, 32 AD3d at 414).

Therefore, I would deny the plaintiff's motion for summary judgment on the complaint and grant the defendant's cross motion for summary judgment dismissing the complaint. I would thus vote to reverse the judgment dated April 14, 2006, award judgment in favor of the defendant and against the plaintiff dismissing the complaint, and modify the order dated March 2, 2006, accordingly.

Motion by the respondent on appeals from two orders of the Supreme Court, Kings County, dated January 3, 2006 and March 2, 2006, respectively, and a judgment of the same court dated April 14, 2006, inter alia, to strike footnote 2 on pages 10 and 11 of the appellant's main brief on the ground that it contains or refers to matter dehors the record. By decision and order on motion of this Court dated February 7, 2007, that branch of the motion which was to strike footnote 2 on pages 10 and 11 of the appellant's main brief was referred to the panel of Justices hearing the appeals for determination upon the argument or submission thereof.

Upon the papers filed in support of the motion, the papers filed in opposition thereto, and upon the argument of the appeals, it is

Ordered that the branch of the motion which was to strike footnote 2 on pages 10 and 11 of the appellant's main brief is granted and footnote 2 on pages 10 and 11 of the appellant's main brief is stricken, and has not been considered in the determination of the appeals. Mastro, J.P., Santucci, Florio and Carni, JJ., concur.