Matter of Liberty Mut. Ins. Co. v Hall (2025 NY Slip Op 50960(U))

[*1]

Matter of Liberty Mut. Ins. Co. v Hall

2025 NY Slip Op 50960(U)

Decided on June 11, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 11, 2025
Supreme Court, Kings County

In the Matter of the Application of Liberty Mutual Insurance Company, Petitioner,

against
Jayanna Hall and TRAVELERS INSURANCE COMPANY, Respondents.

Index No. 535811/2023

Law Office of Gilbert, McGinnis & Liferiedge, White Plains (Kevin Cuneo-Tomasi of counsel), for Petitioner.
The Law Office of Joshua Irwin, P.C., New York City (Darren Moore of counsel), for Respondent Jayanna Hall.
Law Offices of Tina Newsome-Lee, New York City (Samuel G. Lesman of counsel), for Respondent Travelers Insurance Co.

Aaron D. Maslow, J.

Issue
Whether, pursuant to Vehicle & Traffic Law § 388 (1) ("VTL § 388 [1]"), there was permission between Joel Brach and Farzod Ulmasov, as well as subsequent permission, express or implied between Farzod Ulmasov and Umedjon Gafurov, which would impute liability for the accident onto the vehicle owner Joel Brach, thus requiring indemnification by his insurer, Travelers Insurance Company.

 Introduction
In this Article 75 special proceeding to stay UM arbitration, a framed issue hearing was held on May 27, 2025, to determine whether the vehicle that is insured by Respondent Travelers Insurance Company ("Respondent Travelers") was being operated in the state of theft, or without permission, at the time it was involved in the accident that allegedly injured Respondent Jayanna Hall ("Respondent Hall").
The vehicle in question is owned by Joel Brach ("Mr. Brach"). On September 5, 2023, Mr. Brach was accompanied in his vehicle to the airport by his colleague, Farzod Ulmasov ("Mr. Ulmasov"), where Mr. Brach was taking an international flight. Allegedly, Mr. Brach instructed Mr. Ulmasov to drive his vehicle back to their shared place of employment after departing the airport. Instead, Mr. Ulmasov proceeded to drive the vehicle to the home of his cousin, Farizjon Ysypov. There Mr. Ulmasov allegedly fell asleep without his pants on and Mr. Umedjon Gafurov, a cousin of Mr. Ysypov and of unknown relation to Mr. Ulmasov, purportedly took the keys to the vehicle from Mr. Ulmasov's pants to go run a personal errand. While driving in the early hours of the morning on September 6, 2023, Mr. Gafurov got into a motor vehicle accident which allegedly injured Respondent Hall.
At the hearing before the court on May 27, 2025, Mr. Brach was the lone witness able to be produced on behalf of Respondent Travelers. Testimony from Mr. Brach confirmed that he and Mr. Ulmasov were co-workers at a retail store on Coney Island Avenue which Mr. Brach owned, and that they worked together for about five years (see tr at 12-14). Mr. Brach confirmed that after debarking at the airport, he told Mr. Ulmasov to take the vehicle back to their Coney Island Avenue store (see id. at 14). Mr. Brach, when questioned by Respondent Travelers' counsel as to whether Mr. Ulmasov was left with any instructions upon receipt of the keys, replied with the following: "That he is not allowed to give anybody the car. And he can drive it back to Coney Island Avenue, and park it there, close by" (id. at 14). Mr. Brach further testified that as to any restrictions on the use of the vehicle while he was out of the country, "[Mr. Ulmasov] knows every time I am away he is not allowed to drive, just like that. Just take it back to the store, and if he needs it again, he has to ask me before he uses it" (id. at 14). Mr. Brach's testimony was that Mr. Ulmasov had borrowed his vehicle regularly before, around once or twice a month (see id. at 15). Mr. Brach also testified that every time he lent Mr. Ulmasov his vehicle, "he knows that only he can use it; nobody else can use it" (id. at 15). Mr. Brach testified in this instance that he had never expressed to Mr. Ulmasov that anyone else was allowed to use the vehicle (see id. at 16). Mr. Brach was alerted to the fact that an accident had occurred by text message from Mr. Ulmasov, and Mr. Brach stated that he did not know Mr. Gafurov and had never met him before (see id. at 16).
On cross-examination by counsel for Petitioner Liberty Mutual Insurance Company, Mr. Brach testified that he acted upon the belief that he did not need to file a police report, and that one was never filed (see id. at 19). Mr. Brach stated that Mr. Ulmasov's total use of his vehicle amounted to approximately two or three times a month for the past two to three years (see id. at 20). Regarding Mr. Ulmasov's knowledge that he was restricted in lending the vehicle to anyone, Mr. Brach testified that he had told Mr. Ulmasov as much as one time in the past (see id. at 20). Mr. Brach further confirmed that Mr. Ulmasov knew of this condition because of the nature of Mr. Ulmasov's past use of the vehicle, such as taking it to the store for a short period of time or driving it back to the store from the airport on previous out-of-country trips (see id. at 20).
On cross-examination by counsel for Respondent Hall, Mr. Brach confirmed that the vehicle in question was his personal vehicle and that he had never provided written instructions to Mr. Ulmasov on the vehicle's use before; his instructions to Mr. Ulmasov were only verbally given (see id. at 21). Mr. Brach also testified that he was unaware that the driver of his vehicle, Mr. Gafurov, had given an employee of the insurance company a recorded statement confirming that he had operated the vehicle with consent and that Mr. Ulmasov had provided Mr. Gafurov with the keys to operate on the night of the incident (see id. at 26). Finally, on redirect, Mr. [*2]Brach confirmed that while he was away during the incident in question, Mr. Ulmasov did not ask if anyone else could use his vehicle (see id. at 27).

Findings of Fact and Conclusions of Law
VTL § 388 (1) imputes to the owner of a car the negligence of one who uses or operates it with his permission, express or implied. It appears that express consent between Mr. Brach and Mr. Ulmasov was not present here beyond the explicit instruction to return Mr. Brach's vehicle to their store. However, what is at issue here is whether there is the requisite implied consent present to impute liability from the accident to Mr. Brach and ergo whether Respondent Travelers must indemnify Mr. Brach. VTL § 388 (1) gives rise to a presumption that the vehicle is being operated with the owner's consent (see Bruno v Privilegi, 148 AD2d 652, 653 [2d Dept 1989]). This presumption of consent has been characterized as "very strong" and continues until there is "substantial evidence to the contrary" (Albouyeh v County of Suffolk, 96 AD2d 543, 544 [2d Dept 1983], affd 62 NY2d 681 [1984]). With the limited facts we have before us (solely the testimony of Mr. Brach and none from anyone else privy to what transpired), the Court finds that Respondent Travelers has not met their burden of proof of "substantial evidence to the contrary," and thus Respondent Travelers has not overcome the presumption of implied consent (id.).
Bernard v Mumuni (22 AD3d 186 [1st Dept 2005], affd 6 NY3d 881 [2006]) presents an analogous circumstance involving a motor vehicle accident where the vehicle owner entrusted his vehicle to a friend, but at the time of the accident the vehicle was being driven by the friend's son. The friend claimed that the vehicle was entrusted to him without restriction while the owner claimed that he did not give the friend permission to drive the vehicle (see id. at 188). Additionally present in Bernard is the issue of fact as to whether the friend's son was operating the vehicle with the owner's implied consent pursuant to VTL § 388 (see id. at 186). The Bernard court addressed the first causal link regarding consent between the vehicle owner and friend by stating that, "It is well established that, when the owner of a vehicle places it under the unrestricted control of a second person, the owner's consent to use of the vehicle may reasonably be found to extend to a third person whom the second person permits to drive it" (id. at 188). The First Department acknowledged that in order for the Bernard plaintiff to prevail against the vehicle owner, the plaintiff had to prove that the owner implicitly consented to his friend's use of the vehicle and also that such implied consent extended to the friend's son. The Bernard court went on to hold that the record contained sufficient evidence to infer such a finding of implied consent from the defendant vehicle owner due to the totality of the circumstances. The friend in this instance had left the keys to the vehicle in the home he shared with his son, who assumed the keys belonged to a vehicle that his father said he would purchase for him, and he therefore took the keys and the vehicle on a personal errand where the subject accident occurred. The First Department held that a trier of fact could reasonably infer from the totality of the circumstances based on the familial relationship, members of the same household, and availability of the keys on the table that the son believed that he had his father's permission to use the vehicle and therefore could impute statutory liability on the vehicle owner. (See id.)
Similarly, here there are unanswered questions of whether Mr. Brach gave Mr. Ulmasov unfettered control over the car while he was out of the country and, in turn, whether Mr. Ulmasov gave Mr. Gafurov, the driver of the vehicle during the accident, permission to use it for a personal errand. If the Court is to take Mr. Brach's potentially self-serving testimony at face [*3]value and accept its truthfulness, Mr. Brach gave no express consent to Mr. Ulmasov to drive his vehicle outside of a narrow perimeter of permission, from airport to store, without further acquiescence. However, without the testimony of Mr. Ulmasov, it is impossible to determine with certainty if there was in fact restricted control. Turning to a "totality of the circumstances" application supports an inference of implied permissive use of the vehicle (Bernard, 22 AD3d at 186). Mr. Brach testified that Mr. Ulmasov had borrowed his vehicle regularly — two or three times a month for the past two to three years — and it is this frequency and familiarity of use, combined with the close relationship between the two as co-workers, that leads the Court to reasonably infer that Mr. Ulmasov believed that Mr. Brach would have permitted him to detour to his cousin's home (see tr at 12-20). Mr. Brach also testified as to the nature of Mr. Ulmasov's prior uses: short trips and multiple drives back to the store from the airport after accompanying Mr. Brach (see id. at 20). It is impossible, absent testimony from Mr. Ulmasov himself, to determine the exact nature of his trip to his cousin's home, whether intended to be a brief detour or not. Nonetheless, Mr. Brach's testimony supports the fact that Mr. Ulmasov was clearly comfortable using the vehicle and acted as though consent was present in stopping at his cousin's home on his route back to Coney Island (see id. at 12-20). Further, Mr. Brach testified that his instructions were only given orally to Mr. Ulmasov, and without any further evidence present to the contrary, there remains an undefeated presumption that the vehicle was being operated with the owner's consent (see id. at 21, Bruno v Privilegi, 148 AD2d 652).
Tracking Bernard precedent, with implied permission established between Mr. Brach and Mr. Ulmasov, implied consent must also be proven to have extended to Mr. Gafurov, the driver, for Respondent Travelers' to be held liable (see Bernard, 22 AD3d 186). Again, a "totality of the circumstances" analysis finds that an implication of permissive use did exist between Mr. Ulmasov and Mr. Gafurov (id.). Mr. Brach's testimony referenced that Mr. Ulmasov "knew" that he was restricted in lending the vehicle to anyone for use outside of himself (testimony of Joel Brach, tr at 15-20). Mr. Brach testified that this knowledge was attributed to Mr. Ulmasov because Mr. Brach claimed to have once told Mr. Ulmasov as much, as well as based on the nature of his prior use (see id. at 15-20). Unfortunately, the Court is again without the testimony of Mr. Ulmasov as to whether permission was indeed given from himself to Mr. Gafurov to operate the vehicle. Mr. Gafurov, in a recorded statement to the insurance company, claims that he operated the vehicle with the consent of Mr. Ulmasov and that it was Mr. Ulmasov from whom he obtained the keys (see id. at 26). Amongst conflicting statements, a "totality of the circumstances" determination supports a finding of implied consent (Bernard, 22 AD3d 186). Mr. Gafurov was in the home of his cousin, Mr. Ysypov, and although it is unknown if Mr. Gafurov is also related to Mr. Ulmasov, circumstances indicate that this was a familial situation. Mr. Ulmasov felt comfortable enough to spend the night and the keys were evidently readily available to Mr. Gafurov. As in Bernard where the First Department held a familial comfortability and combined availability of keys enough to establish permissive use and impute liability, we hold here that to be the case as well. (See id. at 188).
The Court looks to a Second Department case, Cherry v Tucker (5 AD3d 422 [2d Dept 2004], which further supports a finding of implied consent between the parties in the case at hand. In Cherry, a defendant security guard of an Avis-Rent-A-Car ("Avis") lot allegedly stole a vehicle and crashed it. The injured plaintiffs sued Avis for damages and Avis refuted liability claims because the vehicle at the time of the accident was stolen (see id. at 423). The Avis lot manager testified that security guards, such as the defendant, were instructed to check incoming [*4]vehicles for damage, retrieve the car keys from the customer, and give them to the service agent on duty, and that guards were not allowed to drive vehicles unless instructed to do so by a manager for the Avis defendants (see id. at 424). The Cherry court nonetheless held that implied consent was present between the security guard and Avis despite Avis's restrictions, resting on public policy concerns over the large number of vehicles rented by rental car agencies and their likelihood of being involved in accidents (see id. at 424; see also Murda v Zimmerman 99 NY2d 375, 380 [2003]). However, relevant here is that the Second Department in Cherry inferred implied consent in part from the security guard's duties regarding returned vehicles, notwithstanding testimony that they were not allowed to drive the vehicles unless instructed to do so (see Cherry, 5 AD3d at 424). The nature of Mr. Ulmasov's prior use of Mr. Brach's vehicle can be analogized to the security guard's familiarity around the Avis rental cars and thus correspondingly evidences permissive use (see id.).
Public policy promotes the heightened degree of care owners are encouraged to exercise when selecting and supervising drivers permitted to operate their vehicles (see Murda 99 NY2d at 379). As stated in Continental Auto Lease Corp. v Campbell (19 NY2d 350, 352 [1967]), "one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant." Indeed, § VTL 388 was designed to "remove the hardship which the common-law rule visited upon innocent persons by preventing 'an owner from escaping liability by saying that his car was being used without authority or not in his business' " (Murda, 99 NY2d at 379, quoting Morris v Snappy Car Rental, Inc., 84 NY2d 21, 27 [1994], quoting Mill v Gabriel 259 AD 60, 61-62 [2d Dept 1940]).
Notably missing in the record before us is "substantial evidence to the contrary" which would support Respondent Travelers' position that Mr. Brach's car was being operated without permissive use or in a state of theft (Albouyeh, 96 AD2d 543 at 544). In another Second Department case, Panteleon v Amaya, (85 AD3d 993 [2nd Dept 2011]), a defendant vehicle owner did successfully rebut a presumption of consent with substantial evidence to the contrary. Here too, analogous facts were present involving a vehicle being loaned to a friend and the vehicle purportedly being stolen while the friend slept. However, in Panteleon both the defendant vehicle owner and the friend to whom defendant vehicle owner loaned the vehicle testified, confirming communal knowledge among the pair that the only permissible user of the vehicle was the friend (see id. at 994). Furthermore, both parties testified that there was no permission given for the third-party driver involved in the accident to use the vehicle. The friend also filed a police report upon waking up to discover that the vehicle was missing. (See id.) The Second Department held that both parties' testimony, combined with the stolen vehicle report, established the defendant vehicle owner's "prima facie entitlement to judgment as a matter of law based upon the evidence that [third-party driver] did not have her consent to operate [vehicle owner's] motor vehicle, and there was no evidence from which permission or authority could be inferred," and dismissed the complaint against her (id.).
In comparison, Respondent Travelers, in putting forth only testimony from Mr. Brach, is on a much weaker evidentiary footing. Mr. Brach testified that no stolen vehicle report had been filed, and we are not presented with any testimony from Mr. Ulmasov as to whether any permission was in fact given to Mr. Gafurov (see tr at 19). We also have a conflicting recorded statement from Mr. Gafurov, who claims to have had permission to use the vehicle from Mr. Ulmasov, and no testimony refuting this statement from Mr. Ulmasov himself, who did not [*5]appear (see id. at ¶ 26).[FN1]
Therefore, it follows that unlike the Panteleon defendant, Respondent Travelers has not put forth a sufficient evidentiary foundation to avoid liability for indemnification under VTL § 388 and overcome a presumption of consent on the part of Mr. Brach.

Conclusion
Accordingly, it is hereby ORDERED as follows:
Respondent Travelers Insurance Company has not overcome its burden of proof with substantial evidence to the contrary to defeat a presumption that the vehicle was being operated with the owner Mr. Brach's consent. The Court, as finder of fact in this framed issue hearing, determines that there was implied permissive use between Mr. Ulmasov and Mr. Gafurov and, therefore, liability from the September 6, 2023 accident is imputed to Respondent Brach, whose liability must be indemnified by Respondent Travelers Insurance Company to the maximum coverage amount in its policy.
The petition herein (Motion Sequence No. 1) is GRANTED and the cross-petition (motion Sequence No. 2) is DENIED. The UM arbitration commenced by Respondent Jayanna Hall against Petitioner Liberty Mutual Insurance Company is permanently stayed.
Judgement to this effect shall be entered by the clerk.
AARON D. MASLOW
Justice of the Supreme Court of the
State of New York

Footnotes

Footnote 1:While the Gafurov statement is hearsay, it is admissible for the purpose of establishing that such a statement was made, which reasonably should impel Mr. Ulmasov to appear and dispute its veracity.